Christopher W. Sweeney (Bar No. 143217)
LAW OFFICES OF CHRISTOPHER W. SWEENEY
1300 Oliver Road, Suite 300
Fairfield, CA  94534
Telephone: (707) 435-1244
Facsimile: (707) 435-1245
cwslaw@comcast.net

Attorneys for Plaintiff
KEEZIO GROUP LLC,
a California limited liability company

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| KEEZIO GROUP, LLC, a California limited liability company<br><br>             Plaintiff,<br><br>      v.<br><br>SLUMBERPOD, LLC, a Delaware limited liability company<br><br>             Defendant. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE LANHAM ACT (*15 U.S.C 1125(a)*), TRADE LIBEL,  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, VIOLATION OF UNFAIR COMPETITION LAW (*CAL. BUS. & PROF. CODE § 17200 ET SEQ.*), UNJUST ENRICHMENT, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**Complaint; Case No.:**

COMES NOW Plaintiff KEEZIO GROUP LLC, a California limited liability company (hereinafter "Plaintiff" or "KEEZIO"), bringing this action against Defendant SLUMBERPOD, LLC (hereinafter "Defendant" or "SLUMBERPOD"), alleging as follows:

## PARTIES

1.      Plaintiff, KEEZIO GROUP LLC., is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business located within the State of California, County of Contra Costa, City of Alamo.  KEEZIO is a company engaged in the business of the design, manufacture, marketing, distribution, and sale of children's products throughout the United States, including the State of California, County of Contra Costa.

2.      Plaintiff is informed and believes and based thereon alleges that Defendant SLUMBERPOD, LLC is and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Bellevue, Washington, doing business in the State of California and in this District by, among other things, marketing, distributing and selling children's products throughout the United States, the State of California and this District.

## JURISDICTION

3.      The Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 as this action arises under the Federal Trademark Act of 1946, as amended, 15 U.S.C. §§ 1124-1125 ("the Lanham Act").  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this case is a civil action between citizens of different states and citizens or subjects of a foreign state, and in which the matter in controversy will exceed, exclusive of costs and interests, seventy-five thousand dollars ($75,000.00).

4.      This Court has personal jurisdiction over Defendant SLUMBERPOD because Defendant (a) markets, distributes and sells its products throughout the United States,

- 2 -

**Complaint; Case No.:**

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244  Fax: (707) 435-1245

1   including to customers within this District through Amazon and through prominent retailers,

2   including Target stores, located within this District, (b) has engaged in tortious and wrongful

3   conduct directed to harm residents of this District, including Plaintiff, (c) has purposefully

4   directed its activities to the State of California, and (d) has purposefully availed itself of the

5   privilege of conducting business activities within the State of California, thus invoking the

6   benefits and protections of its laws.  Venue is proper in this District under 28 U.S.C. Section

7   1391(b)(2) because, inter alia, a substantial part of the events giving rise to the claims occurred

8   in this District, and because Defendants are subject to personal jurisdiction in this District.

9                          **DIVISIONAL ASSIGNMENT**

10          5.       Assignment to this division in proper pursuant to Local Rule 3-2 (c) and (e)

11   because this action arises in the County of Contra Costa as a substantial part of the events

12   giving rise to the claims occurred in the County of Contra Costa and throughout this District.

13                          **FACTUAL BACKGROUND**

14          6.       KEEZIO markets, distributes, and sells its line of products, most notably, its

15   "hiccapop" line of children's products throughout the United States, including the San

16   Francisco Bay Area, primarily on the Amazon online retail sales platform.  Amazon is an

17   online retail outlet that sells consumer products, computing services and digital content,

18   among other products and services.  KEEZIO markets its brands as "Amazon-Exclusive"

19   brands because its core management team has a long and valued relationship with Amazon

20   spanning nearly 20 years.  KEEZIO strategically utilizes the Amazon platform as the primary

21   sales outlet for its products due to the simplicity and ease of use of the platform for its

22   customers.  One product in KEEZIO's hiccapop line is an anytime-anywhere blackout tent,

23   that fits over most playards, inflatable toddler beds, toddler cots and mini cribs, known as the

24   "Hiccapop DayDreamer Blackout Tent for Pack 'n Play" ("DayDreamer"), which was

25   designed and manufactured over a two-year process and recently released on the Amazon

26   platform in November 2023.

27          //

28                                                    - 3 -

**Complaint; Case No.:**

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

**Law Offices of Christopher W. Sweeney**
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

7.      On information and belief, Defendant SLUMBERPOD markets a line of products, including infant sleep systems, on the Amazon platform and through prominent retailers, including Target stores, throughout California and within this District, including a "Portable Sleep Pod Baby Blackout Canopy Crib Cover" that is similar to Plaintiff's DayDreamer.  Plaintiff is further informed and believes that SLUMBERPOD and/or affiliated persons or entities own(s) a U.S. patent associated with its canopy crib cover product - U.S. Patent 11,617,450 entitled "Crib Accessory" (hereinafter "the '450 Patent").

8.      On or about November 27, 2023, counsel for SLUMBPOD forwarded a letter erroneously addressed to "Jianguo Zheng d/b/a Hiccapop" to the email address info@hiccapop.com ("the November 27 Infringement Letter").  In the November 27 Infringement letter, SLUMBERPOD's counsel makes make the unsubstantiated assertion that Plaintiff's DayDreamer product "infringes one or more claims of the '450 Patent" and demands that all parties immediately "cease and desist all selling or offering to sell these infringing products and withdraw these infringing products as well as their advertisement from the marketplace," among other aggressive demands.

9.      After reviewing the November 27 Infringement Letter, KEEZIO discovered that, on or prior to November 27, 2023, purposefully and with the specific intention of maligning KEEZIO's products (including the DayDreamer), tradename and business reputation, and in connection with promoting its products to Amazon, SLUMBERPOD filed a malicious and knowingly false complaint with Amazon alleging that KEEZIO's DayDreamer product infringed upon the '450 Patent owned or controlled by SLUMBERPOD.  KEEZIO further discovered that, as a direct and proximate result of SLUMBERPOD's malicious and knowingly false infringement complaint, Amazon immediately and without any communication or advance notice to KEEZIO, suspended KEEZIO's rights to market and sell its DayDreamer product and removed the product from the Amazon online retail sales platform, resulting in substantial injury to KEEZIO's brand, tradename, and long-established business relationship, as well as pecuniary loss attributable to lost sales of its products.

- 4 -

**Complaint; Case No.:**

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

10.     After receiving notification that its DayDreamer product had been suspended by Amazon, KEEZIO, through its legal counsel, immediately corresponded with SLUMBERPOD's counsel by letter on November 29, 2023, addressing and refuting the infringement claim in detail, and demanding the immediate retraction of the baseless infringement claim communicated to Amazon.  Additionally, to eliminate any potential infringement concerns, KEEZIO engaged its patent counsel to thoroughly review and evaluate the DayDreamer product for potential infringement on the '450 Patent.  Upon completing that review, KEEZIO's patent counsel issued a legal opinion conclusively establishing that KEEZIO's DayDreamer product did not infringe upon '450 Patent owned and/or controlled by SLUMBERPOD ("the Non-Infringement Opinion").  True and correct copies of KEEZIO counsel's November 29 letter and the Non-Infringement Opinion are attached to this complaint as Exhibit "A" and are incorporated herein by this reference.

11.     Notwithstanding KEEZIO's demand therefor, purposefully and with the specific and malicious intention of harming and maligning KEEZIO's brand, business reputation and pecuniary interests, SLUMBERPOD has failed, and as of the filing of this action, continues to fail to retract its baseless infringement claim with full knowledge that KEEZIO has not violated the '450 Patent, or any other intellectual property rights of SLUMBERPOD, or violated any law at all with respect to the promotion, advertisement or sale of its DayDreamer product.  Moreover, despite KEEZIO's ongoing efforts to appeal the suspension and removal of its DayDreamer product from the Amazon sales platform, as of the filing of this action, the DayDreamer remains suspended by Amazon during the height of the holiday selling season, and KEEZIO has suffered and continues to suffer substantial and continuing injury to its brand, tradename, and pecuniary interests each day that the suspension of its DayDreamer product by Amazon continues.

//

//

//

**Complaint; Case No.:**

**FIRST CLAIM FOR RELIEF**

**(Violation of § 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))**

12.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

13.     In connection with the promotion of Defendant's products to Amazon, Defendant has disseminated and/or caused others to disseminate into interstate commerce false and misleading statements concerning Plaintiff and its products by filing malicious and knowingly false complaints with Amazon alleging that Plaintiff's DayDreamer product infringed upon the '450 Patent owned or controlled by Defendant SLUMBERPOD in violation of § 43(a) of the Lanham Act.  The knowingly false infringement complaints filed by Defendant in connection with the promotion of Defendant's products to Amazon constitute false and misleading representations of fact that are likely to confuse, mislead and deceive Amazon as to the nature, characteristics, and qualities of Plaintiff's products, including the DayDreamer.  Defendant's knowingly false infringement complaints were maliciously intended to injure, and  have injured Plaintiff's brand, business reputation and pecuniary interests, by, inter alia, directly causing the suspension and removal of Plaintiff's DayDreamer product from the Amazon online retail sales platform.  Unless immediately enjoined by this Court, Defendant's malicious and unlawful conduct will continue to confuse, mislead, and deceive as to the nature, characteristics, and qualities of Plaintiff's products, including DayDreamer, and will continue to cause injury to Plaintiff's brand, business reputation and pecuniary interests.

14.     As a direct and proximate result of Defendant's unlawful acts and practices as herein alleged, Defendants' conduct has caused, and unless immediately enjoined by this Court will continue to cause, irreparable harm to Plaintiff's business, reputation, and goodwill for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.  Additionally, Defendant's unlawful acts and practices described herein are, and unless enjoined by this Court will continue to be in violation of § 43(a) of the Lanham Act.

**Complaint; Case No.:**

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

15.     As a direct and proximate result of Defendants' unlawful conduct herein alleged, Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

16.     Further, by virtue of Defendant's purposeful and knowing violation of § 43(a) of the Lanham Act (25 U.S.C. § 1125(a)), and in addition to the recovery of Plaintiff's damages and the injunctive relief requested herein, Plaintiff is entitled to recovery of Defendant's profits, costs of this action, reasonable attorney's fees, as well as all other monetary amounts, including treble damages, as specified in 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### (Trade Libel)

17.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

18.     As hereinabove alleged, Defendant has repeatedly made statements alleging patent infringement by Plaintiff that would clearly be understood to have disparaged (a) the desirability and quality of Plaintiff's products, including DayDreamer, and (b) Plaintiff's brand and business reputation ("the Statements").

19.     Defendant made and published the Statements to a person other than Plaintiff.

20.     The Statements were and are untrue, and were made without justification or privilege.

21.     At the time Defendant made and published the Statements, Defendant knew the Statements were untrue, or acted with reckless disregard as to the truth or falsity of the Statements.

22.     At the time Defendant made and published the Statements, Defendant knew or should have known that third parties might act in reliance on the Statements, causing financial losses and/or injury to Plaintiff.

//

**Law Offices of Christopher W. Sweeney**
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

- 7 -

23.     As a direct and proximate result of Defendants' publication of the Statements, Amazon suspended and removed Plaintiff's DayDreamer product from the Amazon online retail sales platform and Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

24.     Defendant's publication of the Statements was a substantial factor in causing the harm to Plaintiff herein alleged.

## THIRD CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

25.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

26.     Plaintiff has, and at all relevant times herein mentioned has had, valid and existing contractual relationships with Amazon and with Plaintiff's customers who purchase Plaintiff's children's products, including DayDreamer, on Amazon's online retail sales platform.

27.     Defendants are aware, and at all relevant times herein mentioned have been aware of the contractual relationships between Plaintiff and Amazon and between Plaintiff and its customers.

28.     By engaging in the wrongful acts hereinabove alleged, specifically, the repeated assertion of malicious and knowingly false claims of patent infringement, Defendants knowingly and intentionally disrupted plaintiff's contractual and economic relationships with Amazon and with Plaintiff's customers by inducing Amazon to suspend and remove Plaintiff's DayDreamer product from the Amazon online retail sales platform.  By engaging in the conduct alleged herein, Defendants knew that Plaintiff would suffer harm from the disruption of its contractual relationships with Amazon and Plaintiff's customers.

//

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

- 8 -

Complaint; Case No.:

29.     As a direct and proximate result of Defendants intentional acts herein alleged, the contractual relationships of Plaintiff described herein have been, and continue to be actually disrupted in that Defendants' malicious infringement claims have induced Amazon to suspend and remove Plaintiff's DayDreamer product from the Amazon online retail sales platform.  Defendants' conduct has caused, and will continue to cause, irreparable harm to Plaintiff's business interests, and has significantly damaged plaintiff's contractual relationships described herein.

30.     As a direct and proximate result of Defendants' unlawful conduct herein alleged, Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

31.     The acts of Defendants described herein were willful, fraudulent, malicious, and oppressive and in conscious disregard of the rights of Plaintiff, and were taken with knowledge that such acts would cause harm to Plaintiff.  Plaintiff is therefore entitled to exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

32.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

33.     Plaintiff has, and at all relevant times herein mentioned has had, valid and existing contractual relationships with Amazon and with Plaintiff's customers who purchase Plaintiff's children's products, including DayDreamer, on Amazon's online retail sales platform.  Additionally, Plaintiff has prospective economic relationships with Amazon and with its customers, with the probability of significant, future economic benefit to Plaintiff as a result of these economic relationships.

34.     Defendants are aware, and at all relevant times herein mentioned have been aware of the contractual relationships between Plaintiff and Amazon and between Plaintiff and

- 9 -

**Complaint; Case No.:**

its customers.

35.     By engaging in the wrongful acts hereinabove alleged, specifically, the repeated assertion of malicious and knowingly false claims of Patent infringement as hereinabove alleged, Defendants knowingly and intentionally disrupted plaintiff's contractual and economic relationships, and the prospective economic benefits thereof, with Amazon and with Plaintiff's customers described herein by inducing Amazon to suspend and remove Plaintiff's DayDreamer product from the Amazon online retail sales platform.  By engaging in the conduct alleged herein, Defendants knew that Plaintiff would suffer harm from the disruption of its contractual relationships with Amazon and Plaintiff's customers.

36.     As a direct and proximate result of Defendants' unlawful conduct herein alleged, Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

37.     The acts of Defendants described herein were willful, fraudulent, malicious, and oppressive and in conscious disregard of the rights of Plaintiff and were taken with knowledge that such acts would cause harm to Plaintiff.  Plaintiff is therefore entitled to exemplary and punitive damages.

## **FIFTH CLAIM FOR RELIEF**

### **(Violation of Unfair Competition Law)**

### **[*Cal. Bus. & Prof. Code § 17200 et seq.*]**

38.     Plaintiff realleges and incorporates paragraphs 1 through 12, inclusive, as though fully set forth herein.

39.     By engaging in the wrongful acts hereinabove alleged, specifically, the repeated assertion of malicious and knowingly false claims of Patent infringement as hereinabove alleged, defendants have engaged in unlawful, fraudulent, and/or unfair business practices in violation of California Business and Professions Code section 17200 et seq., designed to deprive Plaintiff of the economic benefits of its established business relationships with

Complaint; Case No.:

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

Amazon and with its customers, and which gives Defendants a competitive advantage in the retail sale of its products on the Amazon platform.

40.     As a direct and proximate result of Defendants' unlawful conduct herein alleged, Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

41.     Pursuant to California Business and Professions Code section 17203, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as disgorgement of all of Defendants' profits associated with this unlawful competition.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

42.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

43.     By engaging in the conduct described above, Defendants have benefited and continue to benefit from their wrongdoing and have been unjustly enriched by reaping the benefits of its unlawful activities, all to Plaintiff's injury and damage.

44.     Under the circumstances of this case, it would be inequitable for Defendants to retain the benefits unjustly received from their wrongful actions herein alleged without repaying the lost value and benefit to Plaintiff.

45.     As a direct and proximate result of Defendants' unlawful conduct herein alleged, Plaintiff has suffered, and continues to suffer damages, including lost sales and profits, in a total amount presently unknown and to be determined at trial according to proof, but which Plaintiff reasonably estimates will exceed $75,000.00.

//

//

//

Complaint; Case No.:

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

**SEVENTH CLAIM FOR RELIEF**

**(Injunctive Relief)**

46.     Plaintiff realleges and incorporates paragraphs 1 through 13, inclusive, as though fully set forth herein.

47.     By engaging in the conduct described above, Defendants have willfully and purposefully harmed Plaintiff and have benefited and continue to benefit from their wrongdoing, all to Plaintiff's injury and damage.  The conduct of Defendants in maliciously interfering with Plaintiff's contractual relationships and prospective economic advantage, and in violation of the statutory provisions above referenced, constitute a continuing injury to and interference with Plaintiff's business, which diminishes Plaintiff's profits, and which cannot be fully and adequately compensated in damages.

48.     Unless an injunction is issued prohibiting Defendants from violating Plaintiff's contractual and statutory rights as hereinabove alleged, Plaintiff will continue to suffer irreparable harm to its brand, tradename and long-established business relationships, and Plaintiff will have no adequate remedy at law.

49.     Accordingly, Plaintiff seeks a preliminary and permanent injunction prohibiting Defendants from maliciously interfering with Plaintiff's contractual relationships and prospective economic advantage as hereinabove alleged in violation of Plaintiff's contractual and statutory rights.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Relief)**

50.     Plaintiff realleges and incorporates paragraphs 1 through 11, inclusive, as though fully set forth herein.

51.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff maintains that its DayDreamer product does not infringe upon the '450 Patent owned and/or controlled by Defendants whereas Defendants dispute this contention and maintain that their patent rights

Complaint; Case No.:

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

1  have been infringed.

2      52.    Plaintiff desires a judicial determination of the parties' respective rights and

3  duties relative to the conflicting claims.  A judicial declaration is necessary and appropriate at

4  this time under the circumstances in order that Plaintiff may ascertain its rights and duties and

5  obtain a fair and just adjudication of the dispute.

6                                  **PRAYER FOR RELIEF**

7      WHEREFORE, Plaintiff prays that judgment be entered in its favor in this action as

8  follows:

9      1.    For a finding that Defendants have violated § 43(a) of the Lanham Act (25

10  U.S.C. § 1125(a));

11      2.    For preliminary and permanent injunctive relief ordering Defendants to cease

12  their unlawful acts and practices in violation of § 43(a) of the Lanham Act (25 U.S.C. §

13  1125(a)), and for an order compelling Defendants to issue a retraction statement to Amazon (to

14  be prepared in cooperation with, and to the satisfaction of Plaintiff) expressly retracting the

15  false and misleading allegations of patent infringement made by Defendants;

16      3.    For disgorgement of Defendant's profits, costs of this action, reasonable

17  attorney's fees, and all other monetary amounts, including treble damages, specified in 15

18  U.S.C. § 1117(a) due to Defendant's purposeful and knowing violation of § 43(a) of the

19  Lanham Act (25 U.S.C. § 1125(a));

20      4.    For actual damages against Defendants in an amount presently unknown to

21  Plaintiff to be established at trial according to proof, but which Plaintiff reasonably estimates

22  will exceed $75,000.00;

23      5.    For exemplary and punitive damages in an amount according to proof at the

24  time of trial;

25      6.    For a finding that Defendants have violated *Cal. Bus. & Prof. Code § 17200 et*

26  *seq.*

27      7.    For preliminary and permanent injunctive relief ordering Defendants to cease

28                                                              - 13 -

**Law Offices of Christopher W. Sweeney**
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

1   their unfair competition, as well as disgorgement of all of Defendants' profits associated with

2   this unlawful competition;

3       8.   Compelling defendants to provide an accounting of any profits improperly made

4   as a result of their unlawful conduct as herein alleged, and imposing a constructive trust on any

5   such profits in favor of Plaintiff, as well as compelling Defendants to disgorge all profits

6   accrued as a result of its unlawful conduct as herein alleged in an amount to be determined at

7   trial according to proof;

8       9.   For a judicial declaration as to the parties' rights and obligations relative to the

9   conflicting claims asserted in this action;

10      10.  For reasonable attorney's fees under California Code of Civil Procedure

11  § 1021.5;

12      11.  For costs of suit herein incurred; and

13      12.  For such other and further relief as the Court may deem just and proper.

14  Dated:  December 4, 2023          LAW OFFICES
                                      OF CHRISTOPHER W. SWEENEY
15

16                                        */s/ Christopher W. Sweeney*
                                      By: _____
17                                        Christopher W. Sweeney
                                          Attorney for Plaintiff
18                                        KEEZIO GROUP LLC

19

20

21

22

23

24

25

26

27

28

- 14 -

**Complaint; Case No.:**

Law Offices of Christopher W. Sweeney
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 3-6(a) of the

Local Rules of the United States District Court for the Northern District of California, Plaintiff

KEEZIO GROUP LLC demands a trial by jury of this action.

Dated: December 5, 2023      LAW OFFICES OF
                             CHRISTOPHER W. SWEENEY

                                  */s/ Christopher W. Sweeney*
                             By: _____
                                  Christopher W. Sweeney
                                  Attorney for Plaintiff
                                  KEEZIO GROUP LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Law Offices of Christopher W. Sweeney**
1300 Oliver Road, Suite 300, Fairfield, CA 94534
Phone: (707) 435-1244   Fax: (707) 435-1245

- 15 -

**Complaint; Case No.:**

EXHIBIT "A"

# WIDERMAN MALEK
## ATTORNEYS AT LAW

PLEASE REPLY TO:
Melbourne Office
1990 W. New Haven Ave.
Second Floor
Melbourne, FL 32904
321.255.2332

November 29, 2023

**Sent Via Email Only to: wmckenna@uspatent.com**

Mr. William A. McKenna
Woodard, Emhardt, Henry, Reeves & Wagner, LLP
111 Monument Cir #3700,
Indianapolis, IN 46204

Dear Mr. McKenna,

      I represent Keezio Group, LLC, (Keezio) owner of the Hiccapop brand. Keezio is unsure how you determined the individual identified in your letter, Mr. Jianguo Zheng, is the owner of Hiccapop, but he is not affiliated with Hiccapop. Hiccapop is a well-recognized and esteemed brand, particularly on Amazon. Its products have garnered nearly two hundred thousand 4.5 - 5 star reviews and is among the premiere brands on the marketplace for a wide variety of infant and toddler products. Its sterling reputation has been earned by selling quality products and carefully complying with best practices for selling products on the Amazon marketplace.

      Moreover, Keezio recognizes the value of intellectual property and the importance of properly enforcing such rights and has previously successfully defended itself against other such improper assertions of IP that claim a broader scope of protection than is reasonable.

      Keezio received the letter you sent to the email address info@hiccapop.com on November 27, 2023, alleging the Hiccapop DayDreamer product infringes at least claim 1 of U.S. Patent No. 11,617,450 ("the '450 patent"). In that letter, you make the unsubstantiated assertion that the DayDreamer product infringes the claim, providing no explanation on how that conclusion was reached. Keezio asked me to review claim 1 of the '450 patent to confirm the DayDreamer does not infringe, as Keezio respects the legitimate assertion of IP rights. **It is my opinion that the DayDreamer does not infringe claim 1, the only independent claim, of the '450 patent.**

      As you know, claim 1 is directed to "[a] self-supporting pod configured to fit a crib therein." A "self-supporting pod " is defined in the specification as meaning "the device can unfold and remain in its open position using only components that are integral to the pod." Such "integral" components include an "integral frame" which "refer[s] to a frame which does not need to be removed from the fabric portion of the pod in order to collapse and fold the pod." Additionally, the specification further defines "self-supporting pod " as "[a structure] in which all that may be required to put up the structure is to open it or unfold it from its closed position."



Moreover, that flexible frame is described in claim 1 as being "constructed to… permit folding the pod into a compact size when in a collapsed position." Such folding is described at great length in the specification of the '450 patent, with the flexible frame being folded inside the pavilion. Furthermore, "collapsible" is defined in the specification as a structure that "can be reversibly set up into its open, use position and returned to its closed, portable position, generally, generally only by unfolding and folding the slumber pod without removing the structural pod frame from the pod fabric." This further supports that the "folding" of the pod is defined in the '450 patent as closing the pod with the frame remaining inside the pavilion.

The DayDreamer clearly does not include such a flexible frame. Instead, the DayDreamer utilizes poles connected by an elastic cord that must be assembled and attached to the tent and subsequently disassembled and removed from the tent of the DayDreamer for assembly and disassembly of the tent. Indeed, the poles of the DayDreamer would prevent the tent from "folding" as required by claim 1. Moreover, said poles are demonstrably not "integral" with the tent, as clearly shown in Hiccapop's promotional videos where it is clear they are assembled separately Those videos also clearly demonstrate that the DayDreamer is not "self-supporting" in that simply unfolding the DayDreamer from its closed position would result in the tent lying on the ground, unusable, and the poles would still have to be attached to provide structure. Furthermore, the DayDreamer cannot be put into a "collapsed position" as required by claim 1 and defined in the '450 patent, as the rods must be removed to disassemble the tent.

For at least these reasons, it is clear the DayDreamer does not infringe claim 1 of the '450 patent. Given the obvious nature of these differences between the DayDreamer product and the limitations of claim 1 of the '450 patent, any allegation of such infringement could be seen as the result of making the allegation without conducting a reasonable inquiry into such infringement, particularly with regard to the proper scope of terms defined in the specification. Keezio is prepared to demonstrate this non-infringement in any proceeding in any venue.

Regarding the Amazon Patent Evaluation Express (APEX) Program in which you have participated to remove the DayDreamer from the marketplace. I am advised that your malicious effort to improperly shut down my client has indeed resulted in them being taken down. As such, from yesterday forward, damages are now accruing. Should you refuse to retract your complaint by today at 5PM PST, your actions will be considered a clear violation of well-established policies on Amazon, as the intent of the APEX program of which you have availed yourself, is to give the defendant a 21-day opportunity to provide proof of non-infringement. Yet you did not give us that courtesy, and instead filed your baseless complaint which has now lead to my client's current and continuing damages

As a result of your malicious and unlawful actions, my client now suffers substantial economic harm to not only its new product but to its brand name, business reputation and





pecuniary interests each hour that its product remains suspended on Amazon. Demand is hereby made that you immediately retract any alleged patent infringement.

I strongly urge you to not underestimate my client's resolve and the seriousness with which it views your client's meritless actions. Should you fail to immediately retract your spurious complaints, every available legal claim will be aggressively pursued until all economic harm is fully recompensed and all punitive remedies against your client run their full legal course.

Regarding the use of the terms "slumber pod" in the email you identified, Keezio admits no infringement of any registered trademark, such non-infringement arising from the differences between the mark and differences between the goods, along with many other bases of non-infringement. This notwithstanding, as a gesture of goodwill and in an effort to amicably resolve this disagreement, Keezio will refrain from using that terminology moving forward with regard to the DayDreamer product.

Sincerely,

**WIDERMAN MALEK, PL**

Daniel C. Pierron
DPierron@USLegalTeam.com

DCP:omc





# WIDERMAN MALEK
### ATTORNEYS AT LAW

Please Reply To:
Melbourne Office
1990 W. New Haven Ave.
Second Floor
Melbourne, FL 32904
321.255.2332

November 30, 2023

**Sent Via Email Only to: Jasonclute1@gmail.com**

Keezio Group, LLC
Mr. Lorne Jason Clute
2375 Roundhill Drive
Alamo, CA 94507

Re:     **Non-Infringement Opinion for "Hiccapop DreamPod"**
Our File No.:        3454.00009

Dear Mr. Clute:

Per your request, we have conducted a non-infringement analysis of your Hiccapop DayDreamer product for non-infringement of U.S. Patent No. 11,617,450 ("the '450 patent"). It is our opinion that the DayDreamer product does not infringe independent claim 1 of the '450 patent.

In conducting the analysis, we have reviewed the independent claim of the '450 patent, we have parsed and broken out each element of the claim, reviewed the specification of the '450 patent to better understand what is within the scope of those claim elements, and compared the elements to the DayDreamer product.

It is our opinion the DayDreamer product does not infringe claim 1 of the '450, either literally or under the Doctrine of Equivalents. Specifically, it is our opinion that the DayDreamer product is not "a self-supporting pod configured to fit a crib therein" as required in the preamble of claim 1, and further does not include "a flexible frame… constructed… to permit folding the pod into a compact size when in a collapsed position."

Claim 1 is reproduced in its entirety below:

1. A self-supporting pod configured to fit a crib therein, comprising:

a fabric pavilion comprising two pairs of opposing fabric sides, wherein:

a first side of a pair is similar in size and shape to a second side of the pair;

each side in one pair is joined to each of the opposing sides in the other pair,

each side has a base end and a top end with the base end being wider than the top end such that the joined sides form an open rectangular base configured to insert the crib therein, thereby enclosing the crib in the pod, and



at least one of the fabric sides comprises an access panel sized to permit loading and unloading of a size-appropriate occupant into the crib when the pod is deployed over the crib,

wherein a compartment is included in or configured for attachment to the fabric pavilion, and wherein the compartment is configured to provide a baby monitor with visual access to the inside of the pod when the baby monitor is inside the compartment, and wherein, when the pod is in an open, use position, the compartment is accessible from the exterior of the pavilion via an opening; and

a flexible frame having a size and shape configured to fit the crib therein and constructed to keep the fabric pavilion taut when in the open, use position and to permit folding the pod into a compact size when in a collapsed position,

wherein the flexible frame consists of first and second flexible struts, wherein the first flexible strut crosses over the second flexible strut at an apex of the pod.

We will not address every limitation of the claim that may or may not be practiced by the DayDreamer product. Instead, we will focus on those elements that, in our present opinion, are not practiced by the DayDreamer product. Our silence as to any of the other claim limitations should not be construed as acknowledgment or concession that the DayDreamer products practices those limitations.

### "A self-supporting pod"

As noted above, it is our opinion the DayDreamer product is not a "self-supporting pod" and/or is not "configured to fit a crib therein." The terms "self-supporting" and "crib" are each defined in the specification, and thus their effect on the scope must be determined in light of how the terms are defined. "Self-supporting" is defined at Col. 3, lines 55-67 as follows:

> "Self-supporting" when describing the pod means that the device can unfold and remain in its open position using only components that are integral to the pod, without the need for additional parts independent of the pod itself such as stakes and without the need for attachment to the crib or bed (as the case may be). For example, typical tents are provided as a fabric canopy with separate poles that must be inserted or attached to the canopy in order to hold up the tent. A "self-supporting" structure is one in which all that may be required to put up the structure is to open it or unfold it from its closed





_____

position. In some embodiments, the self-supporting pod automatically pops open once unfolded or unfolding is initiated.

This definition has several ramifications for the scope of claim 1. First, a self-supporting pod "can unfold and remain in its open position using only components that are integral to the pod." The open position is where the pod is positional to encapsulate the crib. The term "integral" is, itself, open to interpretation, and another portion of the specification is instructive. Col. 4, lines 9-12 teaches "For purposes of this specification, 'integral frame', 'integrated frame' and the like refer to a frame which does not need to be removed from the fabric portion of the pod in order to collapse and fold the pod." Additionally, Col. 6, lines 41-44 teaches "The flexible frame 220 is integrated with the fabric enclosure 210. That is, the pop-up pod can be collapsed without removing the frame 220 from the fabric enclosure 210." Accordingly, we interpret a "self-supporting pod" to mean a product having an "integral" frame, with such frame not needing to be removed from a fabric portion of the product in order to collapse and fold the product.

This is a first basis on which the DayDreamer product does not infringe claim 1. The DayDreamer frame is constructed of discrete rods that are connected together by a single elastic cord. The rods are initially unassembled, meaning they are not in a configuration to support the tent portion of the DayDreamer product. The rods are assembled by aligning the ends of adjacent rods and permitting one rod to be seated and removably attached to the other rod. Once fully assembled, the assembled rod structures may be attached to the tent and are sufficiently flexible to flex and define an arcuate shape to provide support and structure to the tent while being retained by structures extending from lower corners of the tent. The assembled rod structures are <u>not</u>, however, sufficiently flexible to "collapse and fold" the tent. Indeed, the assembled rod structures must be detached from the tent before the tent can be collapsed and folded.

**"[C]onfigured to fit a crib therein"**

The preamble of claim 1 further requires the self-supporting pod be "configured to fit a crib therein." What constitutes "configured to fit a crib" will necessarily depend on the size of the crib. Absent an explicit definition in the specification, a person of ordinary skill in the art would likely interpret the term "crib" to mean a full size baby crib. This type of product is defined by the Consumer Product Safety Commission (CPSC) as follows:

> A full-size crib is a bed that: (1) is designed to provide sleeping accommodations for an infant; (2) is intended for use in the home, in a child care facility, in a family child care home, or in places of public accommodation affecting commerce; and (3) that has interior dimensions of 28 ± 5/8 inches (71 ± 1.6 centimeters) in width x 52 3/8 ± 5/8 inches (133 ± 1.6 centimeters) in length.

https://www.cpsc.gov/FAQ/Full-Size-Baby-Cribs





_____

A DayDreamer product cannot fit a crib of this size. As provided at https://www.hiccapop.com/products/daydreamer-blackout-tent-for-pack-n-play, the DayDreamer product has a length of 50 inches, 2 3/8 inches below the minimum size requirement of the CPSC. Moreover, that maximum length is at the bottom of the DayDreamer product, whereas the maximum length of cribs is most commonly located at or near the top of the crib. Owing to the arched geometry of the DayDreamer product, the length of the tent at the height of the maximum length of the crib will be substantially less than 50 inches, and thus substantially less able to "fit" a crib.

This notwithstanding, the specification provides a definition of "crib" at Col. 4, lines 6-8, as follows: The word "crib" means crib, baby bed, portable play-yard and similar beds designed for babies to sleep in unless expressly stated otherwise. The "unless expressly stated otherwise" introduces substantial uncertainty into the bounds of this definition. What constitutes "expressly stat[ing] otherwise" is inherently subjective. For example, the specification discloses at Col. 4, lines 45-49 "That is, in some 'one-size-fits-all' embodiments, the pod is sized large enough to fit over most cribs and play yards while still leaving enough room in the height for a suitable occupant, for example a baby or toddler that is size appropriate for the enclosed crib, to stand." Does this recitation constitute expressly delineating cribs and play yards as separate items over which the pod may be placed, with separate sizing requirements? Indeed, the fact that the specification contemplates needing a "one-size-fits-all" embodiment shows that the Applicant understands that a pod configured to fit over a play yard may not fit over a crib. Accordingly, when the term "crib" is used in the claim, it is reasonable to interpret the claim as requiring the pod to fit over a crib specifically, and not a crib that may be understood as a play yard. This interpretation is reinforced in many other places throughout the specification, such as, for example, Col. 4, lines 58-65:

> In the illustrated embodiment, the pod 100 is sized large enough to fit over most cribs and play yards while still leaving enough room in the height for a suitable occupant, for example a baby or toddler that is age and weight appropriate according to the specifications of the enclosed crib, to stand in the crib—and as such is a one-size-fits all crib enclosure solution. For example, as shown in FIG. 1 , the length 12 of the pod may be about 66″, the height 14 of the pod may be about 66″ and the width 16 of the pod may be about 33″.

Of particular note is that the length of the pod is 66 inches, substantially greater than the 52 3/8 inches required by the CPSC, thus suggesting that the Applicant was specifically contemplating fitting a "crib" of those particular dimensions within the pod. This interpretation is further reinforced by disclosure at Col. 5, lines 3-6, which teaches "[f]or example, rather than being a "one-size-fits-all" solution, if desired, the dimensions may be tailored to more closely fit over a *specific crib* or play yard with less room between the boundaries of the crib and the sides of the pod" (emphasis added). Thus, it seems





_____

most plausible that when a "crib" is recited in the claims, a crib conforming to known standards is intended, whereas were the terms "specific crib" or "play yard" are used, products having sizes that differ from the known standards for a full size crib are intended.

As noted above, the DayDreamer product cannot fit over a standard, full size crib. Thus, the DayDreamer product is not "configured to fit over a crib" as required by claim 1.

**Preamble**

As noted above, the limitations "self-supporting pod" and "configured to fit over a crib" are both in the preamble of claim 1. Whether terms in a preamble effect the scope of a claims is determined in light of the claim as a whole, particularly "if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim" as required by case law. For each of these elements in the preamble, limitations in the body of the claims demonstrate that the preamble is so necessary.

As to "self-supporting pod," claim 1 requires "a flexible frame… constructed to keep the fabric pavilion taut when in the open, use position and to permit folding the pod into a compact size when in a collapsed position." The "permit folding the pod into a compact size when in a collapsed position" language demonstrates that the frame itself must permit such folding. As noted above, this type of folding was discussed explicitly in the context of "self-supporting" pods that folded with the frame still in the pod, such that when the pod is opened from its closed position, all "integral" parts are present and no external parts are required to put the pod into its open position. Accordingly, the term "self-supporting" necessarily provides important context and definition to the flexible frame, and thus limits the scope of the claim.

As to "configured to fit over a crib," claim 1 includes three limitations that demonstrate the size of the crib is of particular importance to the claim:

> each side has a base end and a top end with the base end being wider than the top end such that the joined sides form an open rectangular base configured to insert the crib therein, <u>thereby enclosing the crib in the pod</u>;

> at least one of the fabric sides comprises an access panel sized to permit loading and unloading of a size-appropriate occupant into the crib <u>when the pod is deployed over the crib</u>; and

> a flexible frame <u>having a size and shape configured to fit the crib therein</u>

(emphasis added). Accordingly, the size of the crib necessarily provides definition to the size and shape of the fabric sides and the flexible frame of the pod of claim 1.





_____

Accordingly, the limitation "crib" and the size requirements flowing therefrom must be read into the body of the claim.

### [A] flexible frame… constructed… to permit folding the pod into a compact size when in a collapsed position

As mentioned above, the flexible frame required by claim 1 must be "constructed… to permit folding the pod into a compact size when in a collapsed position." The term "permit folding" is used in the specification at Col. 6, lines 36-41, which teaches "The flexible support frame 220 is configured: to keep the fabric enclosure taut when the pod 200 is in an open, use position (e.g., deployed over a crib, bed, crate, etc.); to permit folding the pod 200 into a compact size when collapsed; and, to cause the pod to pop-up automatically into a tent-shape when unfolded." What constitutes "folding" is described throughout the specification in many ways. However, disclosure of the specification that reads onto seemingly all embodiments is provided at Col. 7, line 64 – Col. 8, line 4 is provided below:

> In each of the illustrated embodiments, the pod 200 comprises a fabric enclosure with an integrated frame that: keeps the fabric enclosure taught when in the open, use position; permits the pod to collapse <u>without having to remove the frame and fold down onto itself into a more compact, portable shape</u>; and may also enable the pod to automatically pop up into the open use position when unfolded.

(emphasis added). Accordingly, the frame of the claimed invention must allow the pod to collapse without removing the frame. Any reasonable interpretation of a "flexible frame" that can "permit folding" as described in the specification necessarily excludes the rod-and-elastic frame of the DayDreamer product. Accordingly, it is our opinion the DayDreamer product does not include a flexible frame as required by claim 1 of the '450 patent.

### Doctrine of Equivalents

The above analysis was to determine that the DayDreamer product does not <u>literally</u> infringe claim 1 of the '450 patent. An alternative mode of infringement is infringement under the doctrine of equivalents (DoE). A product may infringe a claim without literally including all elements of a claim if those elements that are not literally included can be found under the DoE analysis. A claim element may be satisfied if an allegedly infringing device includes an alternative element that performs substantially the same function, in substantially the same way, to obtain the same result. It is our opinion the DayDreamer product does not infringe under the DoE.

As mentioned above, the "self-supporting pod" that is "configured to fit a crib therein" must have substantially the same function. To have substantially the same function, the differences between the claimed function and the function provided by the





Keezio Group, LLC
Mr. Lorne Jason Clute
November 30, 2023
Page 7 of 8
_____

alleged product must be "insubstantial." This is not the case with the DayDreamer product. Quite simply, the DayDreamer does not perform the same function of being "self-supported;" to interpret the function of the DayDreamer requiring a frame that must be separately assembled and attached to the tent when going from the closed position to the open position would completely alter the definition of "self-supported" as defined in the specification. This type of difference cannot reasonably be interpreted as being insubstantial, and thus does not infringe this limitation under DoE. Similarly, assuming *arguendo* that "crib" means a full-sized crib, the DayDreamer product simply does not fit a standard full-sized crib, and so too does not infringe under DoE. Finally, as to the flexible frame, the DayDreamer frame does not enable the type of function required by claim 1 of the frame being constructed to permit folding of the tent into a collapsed position. Accordingly, this limitation similarly is not infringed by the DayDreamer product under DoE.

For at least the above reasons, it is our opinion the DayDreamer product does not infringe claim 1 of the '450 patent, either literally or under DoE. Claims 2-20, which depend from claim 1 and thus include all the limitations of claim 1, are similarly not infringed and do not require further discussion.

As always, please feel free to contact us regarding any question or comment you may have on any aspect of this matter.


Sincerely,

**WIDERMAN MALEK, PL**

Daniel C. Pierron
DPierron@USLegalTeam.com





MELBOURNE, FL   |   ORLANDO, FL