UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEEZIO GROUP,<br><br>   Plaintiff,<br><br>   v.<br><br>SLUMBERPOD, LLC,<br><br>   Defendant. | Case No. 23-cv-06288-NW<br><br>**CLAIM CONSTRUCTION ORDER**<br>Re: ECF No. 58 |

Plaintiff Keezio Group, LLC ("Keezio") sued Defendant SlumberPod, LLC ("SlumberPod") for false advertising and unfair competition. SlumberPod answered the complaint and simultaneously filed counterclaims for the alleged infringement of two patents: U.S. Patent Nos. 11,617,450, and 12,048,381.[1] Before the Court is the parties' claim construction dispute over nine claim terms. Having considered the parties' briefing and evidence, and with the benefit of a November 12, 2025 *Markman* hearing, the Court construes the terms as set forth below.

I.   **BACKGROUND**

   A.   **Technology at Issue**

SlumberPod's '450 patent discloses "crib accessories," and, specifically, "devices for isolating a crib or bed within a room." '450 patent, 1:15-23. The patent describes, "a self-supporting, portable, collapsible, pop-up pod that is sized to fit over most cribs and portable cribs/play yards." *Id*.

---

[1] The Court refers to these respectively as the: '450 patent and the '381 patent.

Claim 1 of the '450 patent states:

> 1. A self-supporting pod configured to fit a crib therein, comprising:
>
> a fabric pavilion comprising two pairs of opposing fabric sides, wherein:
>
> a first side of a pair is similar in size and shape to a second side of the pair;
>
> each side in one pair is joined to each of the opposing sides in the other pair,
>
> each side has a base end and a top end with the base end being wider than the top end such that the joined sides form an open rectangular base configured to insert the crib therein, thereby enclosing the crib in the pod, and
>
> at least one of the fabric sides comprises an access panel sized to permit loading and unloading of a size-appropriate occupant into the crib when the pod is deployed over the crib,
>
> wherein a compartment is included in or configured for attachment to the fabric pavilion, and wherein the compartment is configured to provide a baby monitor with visual access to the inside of the pod when the baby monitor is inside the compartment, and wherein, when the pod is in an open, use position, the compartment is accessible from the exterior of the pavilion via an opening; and
>
> a flexible frame having a size and shape configured to fit the crib therein and constructed to keep the fabric pavilion taut when in the open, use position and to permit folding the pod into a compact size when in a collapsed position,
>
> wherein the flexible frame consists of first and second flexible struts, wherein the first flexible strut crosses over the second flexible strut at an apex of the pod.

'450 patent, claim 1.

Figure 12A from the '450 patent provides an illustration:



**FIG. 12A**

Figure 12A is an overhead view of an embodiment showing an "example of a pod **200** for over a crib. The body can be made with light blocking material . . . A camera pocket **298** with a slit to insert a camera can be included on one side of the pod **200**." '450 patent, 11:23-30. Figure 12A also demonstrates how "the rods or poles **270** extend from opposite corners and cross at the top of the pod **200**. The poles **270** can be fiberglass, spring-back wire, or interlocking poles secured together by a bungie cord." *Id*. at 11:33-39.

On June 30, 2024, the United States Patent and Trademark Office awarded SlumberPod the '381 patent. The '381 patent is a continuation of the '450 patent, and the patents share a specification. *See* '381 patent, Related U.S. Application Data.

### B.     Procedural History

On August 5, 2025, the parties filed a joint claim construction statement. ECF No. 58. SlumberPod filed its opening claim construction brief on September 19, 2025. Opening Brief, ECF No. 60. Keezio filed a responsive brief, and SlumberPod filed a reply. Responsive Brief,

3

1  ECF No. 61; Reply Brief, ECF No. 62.  The Court held a technology tutorial on October 29, 2025,
2  and a claim construction hearing on November 12, 2025.  *See* ECF Nos. 65, 70.

3  The parties now seek construction of nine claim terms from both asserted patents.[2]  They
4  are:

5  1. "compartment" ('450 patent: claims 1, 12; '381 patent: claims 1, 7, 17);

6  2. "crib" ('450 patent: claims 1, 18; '381 patent: claims 1, 12);

7  3. "included in . . . the fabric pavilion" ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17);

8  4. "configured for attachment to the fabric pavilion" ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17);

9  5. "configured to provide a baby monitor with visual access to the inside of the pod" ('450 patent: claims 1, 12; '381 patent: claims 1, 7, 17);

10  6. "flexible frame" ('450 patent: claims 1, 13, and 16; '381 patent: claims 1, 8, 14, 15, 16, 17, 18, and 19);

11  7. "accessible from the exterior of the pavilion via an opening" ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17);

12  8. "configured to fit the crib therein" ('450 patent: claims 1, 18; '381 patent: claims 1, 12, and 17); and

13  9. "configured to fit the play yard therein" ('450 patent: claims 1, 18; '381 patent: claims 1, 12, and 17).

19  *See* ECF No. 58.

20  **II.    LEGAL STANDARD**

21  "It is a bedrock principle of patent law that the claims of a patent define the invention to
22  which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312
23  (Fed. Cir. 2005) (cleaned up).

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Those sources include "the words of the claims themselves, the remainder

---

[2] The Court evaluates terms 2, 8, and 9 collectively.

of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

*Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Claim terms are defined by their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13. In ascertaining the ordinary meaning of a term, courts first look to the patent's claim terms, specification, and prosecution history, which is the patent's "intrinsic record." *Id.* The claim language is "of primary importance" when determining the bounds of the claimed invention and "[t]he specification necessarily informs the proper construction of the claims." *Id*. at 1316. Extrinsic evidence may elucidate relevant art, but such evidence is only considered within the context of intrinsic evidence. *Id*. at 1317-19. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996).

## III. DISCUSSION

The parties' dispute the following claim terms from the asserted patents, and the Court construes each of those terms below.[3]

### 1. "compartment" ('450 patent: claims 1, 12; '381 patent: claims 1, 7, 17)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "compartment" | "a separate division or section" | "a completely separate, enclosed pocket" | "a separate division or section, including but not limited to, a pocket" |

The parties dispute regarding the term "compartment" appears to be whether the "compartment" is a functional concept or a structural limitation. SlumberPod argues that claims 1

---

[3] The parties' proposals reflected in each chart are from the Joint Claim Construction Statement filed on August 5, 2025. *See* ECF No. 58.

5

and 12 of the '450 patent require only what the "compartment" must be used for, not the precise form.  Opening Brief at 9.  Keezio argues that the "compartment" must mean "pocket" because the '450 patent refers to "pockets" throughout the specification.  Responsive Brief at 8.

The Court begins with the claim language, which is "of primary importance" when determining the bounds of the claimed invention.  *Phillips*, 415 F.3d at 1314.  "The appropriate starting point . . . is always with the language of the asserted claim itself."  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Here, the relevant claim language states: "a **compartment** is included in or configured for attachment to the fabric pavilion," that is "configured to provide a baby monitor with visual access to the inside of the pod," and is "accessible from the exterior of the pavilion via an opening."  '450 patent, claim 1 (emphasis added).  Additionally, dependent claim 12 states: "self-supporting pod according to claim 1, wherein the **compartment** is in the form of a pocket with a clear vinyl panel configured to hold the baby monitor."  '450 patent, claim 12 (emphasis added).

The plain meaning of claims 1 and 12 support a construction that does not limit "compartment" to a "pocket," as Keezio proposes.  "Pocket" is too narrow of a construction as pockets are only one possible embodiment.  If "compartment" referred only to "pocket" embodiments, the language in dependent claim 12 would be superfluous.  "Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend."  *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003).  Therefore, the term "compartment" should be construed to be broader in scope than the dependent claim term "pocket."

The Court construes "compartment" to mean "a separate division or section, including but not limited to, a pocket."

6

2. "crib" ('450 patent: claims 1, 18; '381 patent: claims 1, 12)  //  "configured to fit the crib therein" ('450 patent: claims 1, 18; '381 patent: claims 1, 12, and 17)  //  "configured to fit the play yard therein" ('450 patent: claims 1, 18; '381 patent: claims 1, 12, and 17)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| 2. "crib" | "a baby bed or portable enclosure designed for a baby to sleep in" | "a full-sized crib as defined by the CPSC having the following dimensions: interior dimensions of 28 ± 5/8 inches (71 ± 1.6 centimeters) in width x 52 3/8 ± 5/8 inches (133 ± 1.6 centimeters) in length" | "crib, baby bed, portable play-yard and similar beds designed for babies to sleep in" |
| 8. "configured to fit the crib therein" | "set up to contain a baby bed or portable enclosure inside" | "having dimensions such that a crib can fit entirely within, having interior dimensions larger than 28 ± 5/8 inches (71 ± 1.6 centimeters) in width x 52 3/8 ± 5/8 inches (133 ± 1.6 centimeters) in length" | "set up to contain a crib, baby bed, portable play-yard and similar beds designed for babies to sleep in inside" |
| 9. "configured to fit the play yard therein" | "set up to contain a portable enclosure inside" | "having dimensions such that a full-sized crib can fit entirely within, having interior dimensions larger than 42.5" wide by 54" tall by 5' high" | "set up to contain a portable play-yard inside" |

The Court evaluates terms 2, 8, and 9 collectively because the construction of the term "crib" informs the construction of terms 8 and 9. The parties dispute whether the explicit definition of "crib" in the '450 patent specification should apply. Here, the specification defines "crib" as follows: "a 'crib' means crib, baby bed, portable play-yard and similar beds designed to for babies to sleep in." '450 patent, 4:6-8.

7

1  SlumberPod argues that the Court should adopt a construction of "crib" that is similar, but
2  not identical to the patent definition. Opening Brief at 11. Keezio acknowledges the patent
3  definition but argues that the definition is flawed because (i) it defines "crib" as a "crib . . .," and
4  (ii) the definition is confusing in light of the Consumer Product Safety Commission's definition
5  which includes dimensions. Responsive Brief at 9.

6  Here, the specification defined "crib," and the Court must follow that definition. "[T]he
7  claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and
8  clearly set forth a definition of the disputed claim term in either the specification or prosecution
9  history." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

10  Moreover, Keezio's construction limits the claim term, by including the phrase "full-
11  sized," and ignores the plain language of the patent. The specification states, "those skilled in the
12  art will appreciate that modifications are possible in the example embodiments without departing
13  from the broad inventive concepts. For example, the pod may be modified to enclose an adult bed,
14  such as a twin bed, full bed, queen bed…" '450 patent, 12:43-47. The patent envisions functional
15  adaptability not fixed dimensions for "crib[s]." The Court adopts the specification's definition of
16  "crib" in full.

17  The parties raise similar arguments for terms 8 and 9. SlumberPod argues that the Court
18  should construe the terms in light of the specification's definitions and consider that the
19  specification envisions adaptability to various "crib" sizes. Opening Brief at 26. Keezio argues
20  that "cribs" and "play yards" are defined by governmental code and require particular dimensions,
21  and the Court should construe the terms to have such dimensions at a minimum. Responsive Brief
22  at 21, 23. The Court disagrees. Similar to the construction of "crib," terms 8 and 9 do not
23  envision fixed dimensions. The specification recognizes that in some "'one-size-fits-all'
24  embodiments, the pod is manufactured so it can expand and contract to snugly fit over cribs of
25  various sizes." '450, 4:50-53. This intrinsic language indicates a functional adaptability and does
26  not reference extrinsic evidence of defined sizes for cribs and play yards.

27  For terms 8 and 9, the Court adopts the specification's definition and incorporates the
28  definition language in the construction. The Court construes "configured to fit the crib therein" to

8

mean "set up to contain a crib, baby bed, portable play-yard and similar beds designed to for babies to sleep in inside."  The Court additionally construes "configured to fit the play yard therein" to mean "set up to contain a portable play-yard inside."

### 3. "included in . . . the fabric pavilion" ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "included in . . . the fabric pavilion" | "integrated into the fabric material that forms the pavilion" | "an integral part of the fabric pavilion" | "integrated into the fabric material that forms the pavilion" |

The parties dispute which construction of the term "included in . . . the fabric pavilion" is supported by the plain language of the claims and the specification.  The relevant claim language states: "wherein a compartment is *included in* or configured for attachment to *the fabric pavilion*."  '450 patent, claim 1 (emphasis added).

SlumberPod argues that "included in" must mean "integrated into" the fabric pavilion because the claim language distinguishes between two scenarios – included in or configured for attachment – and any other meaning would strip the second phrase of meaning.  Opening Brief at 14.  Keezio argues that the specification better supports that the compartment is inseparable or "integral" to the fabric pavilion.  Responsive Brief at 12.

The Court finds that SlumberPod's proposed constructed is supported by the plain language of the claim and the specification.  The specification shows that the compartment can either be integrated into the fabric pavilion or can be attached to the fabric.  *See* '450 patent, 11:26-28 (the specification states that a camera pocket "can be included on one side of the pod **200**").  This construction avoids making the term "included in" redundant and avoids unnecessary rigidity.  The Court construes "included in . . . the fabric pavilion" to mean "integrated into the fabric material that forms the pavilion."

4. **"configured for attachment to the fabric pavilion"** ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "configured for attachment to the fabric pavilion" | "set up to be connected to the fabric material that forms the pavilion" | "a separable and distinct from the fabric pavilion—i.e. a discrete and separate component" | "set up to be connected to the fabric material that forms the pavilion" |

The parties dispute which construction of the term "configured for attachment to the fabric pavilion" is supported by the plain language of the patent and the specification. The relevant claim language states: "wherein a compartment is included in or *configured for attachment to the fabric pavilion*." '450 patent, claim 1 (emphasis added).

SlumberPod argues that, similar to term 3, by using the disjunctive "included in or configured for attachment," the claim language indicates that "configured for attachment" encompasses arrangements where the compartment is not necessarily built into the fabric but can instead be connected to it. Opening Brief at 16. Keezio argues that the specifications better support that the compartment is separable or distinct from the fabric pavilion. Responsive Brief at 13.

The Court finds that the claim language does not suggest a requirement that the compartment exists independently prior to attachment to the fabric pavilion and must be separable. Instead, the plain language means that the compartment is capable of being connected to the fabric pavilion. The Court construes "configured for attachment to the fabric pavilion" to mean "set up to be connected to the fabric material that forms the pavilion."

5. **"configured to provide a baby monitor with visual access to the inside of the pod"** ('450 patent: claims 1, 12; '381 patent: claims 1, 7, 17)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "configured to provide a baby monitor with visual access to the inside of the pod" | "set up to give visual access to the inside of the pavilion to a baby monitor" | "a compartment having either a clear vinyl material or a clear material, expressly excluding any material that is opaque or partially opaque or otherwise may obstruct or restrict visual access" | "set up to give visual access to the inside of the pavilion to a baby monitor" |

The parties dispute whether the term "configured to provide a baby monitor with visual access to the inside of the pod" should be limited to a particular structure or material. The relevant claim language states: "wherein the compartment is *configured to provide a baby monitor with visual access to the inside of the pod* when the baby monitor is inside the compartment." '450 patent, claim 1 (emphasis added).

SlumberPod argues that the Court should adopt the plain and ordinary meaning and construe the claim to mean "providing a monitor with visual access when the monitor is inside the compartment and ensuring that the compartment is accessible from the exterior—rather than by prescribing any particular structure or material." Opening Brief at 19. Keezio argues that because the claim term uses the word "configured to" the Court must apply the "means-plus-functions" test – when courts construe the claim elements in light of "the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). Responsive Brief at 15.

Under 35 U.S.C. § 112(f), a patentee may express a claim in terms of "means or step[s] for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f). Such means-plus-function claims must "be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

11

*Id.* The Federal Circuit has explained that § 112(f) "allow[s] patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc) (emphasis added).

The Court finds that the "means-plus-functions" test does not apply. *See id.* at 1348; *see also Phillips*, 415 F.3d at 1311 ("Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."). Generally, the use of the term "means" creates a presumption that § 112(f) applies. *Williamson*, 792 F.3d at 1349. Conversely, the absence of the term "means" creates the opposite presumption. *Id.* A party may overcome either presumption by showing that the claims recite (or do not recite) a "sufficiently definite structure" to adequately perform the claimed function. *Id.* In other words, § 12(f) applies only if "the claim term 'fails to recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1348 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Here, "configured to" is not a term that triggers the test; the term is not operating as a function in the claim language. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed Cir. 2015) (terms that are "simply a generic description for software or hardware that performs a specified function" trigger the test, such as "logic" or "module."); 35 U.S.C. § 112(f).

"Configured to" can be construed with a broad or narrow definition, "depend[ing] on the way the phrase is used in the patent." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125134, at *5 (N.D. Cal. Mar. 21, 2022) (construing "configured to" to have the definition "made to" or "designed to"). The context of "configured to" within the claim as a whole (shown above) implies that the term has a narrow definition and means "set up to" or "made for" providing a baby monitor with visual access. The Court finds, within this context, that the term does not contemplate any particular structure or material. The Court construes "configured to provide a baby monitor with visual access to the inside of the pod" to mean "set up to give

12

visual access to the inside of the pavilion to a baby monitor."

### 6. "flexible frame" ('450 patent: claims 1, 13, and 16; '381 patent: claims 1, 8, 14, 15, 16, 17, 18, and 19)

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "flexible frame" | Plain and ordinary meaning | "a flexible structure that is integral with and not separable from a fabric pavilion or pod and permits folding the pod into a compact size when in a collapsed position without removing the flexible structure from the fabric pavilion or pod" | Plain and ordinary meaning |

The parties dispute regarding this term appears to be whether a "flexible frame" must always allow the pod to collapse without removing the frame (Keezo's proposal) or if the frame can be separated from the fabric before it is collapsed (SlumberPod's proposal).

SlumberPod argues that the Court should adopt the plain and ordinary meaning because the claim language's express functional recitations define the scope of the pod and fabric pavilion without redefining "flexible frame" itself. Opening Brief at 21. Keezio argues, "that the flexible frame required by the claims must be 'constructed… to permit folding the pod into a compact size when in a collapsed position.'" Responsive Brief at 18.

Claim 1 recites "a flexible frame having a size and shape configured to the crib therein and constructed to keep the fabric pavilion taut when in the open, use position and to permit folding the pod into a compact size when in a collapsed position." '450 patent, claim 1. The claims also must be construed in light of the specification, which is "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The '450 patent discloses that "[i]n each of the illustrated embodiments, the pod 200 comprises a fabric enclosure with an integrated frame that: keeps the fabric enclosure taught when in the open, use

13

1  position; permits the pod to collapse without having to remove the frame." '450 patent, 7:64-8:2.
2  However, the '450 patent also discloses that "in some embodiments, the frame or part of the frame
3  may ***optionally be removed from the fabric*** enclosure." *Id*. at 6:44-46 (emphasis added).  Thus,
4  the specification supports that a "flexible frame" is used in its ordinary sense and spans a range of
5  implementations, including a frame that can be separated from the fabric before it is collapsed; the
6  construction of the term "flexible frame" includes, but is not limited to, a frame that "may
7  optionally be removed from the fabric enclosure." *Id*.  The Court adopts the plain and ordinary
8  meaning for the term "flexible frame."

      7.    **"accessible from the exterior of the pavilion via an opening" ('450 patent: claims 1, 2, 5, 8, 9, 10, 13, 16, and 19; '381 patent: claims 1, 2, 4, 5, 8, and 17)**

| Disputed Term | SlumberPod's Proposed Construction | Keezio's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "accessible from the exterior of the pavilion via an opening" | "reachable from outside the pavilion through an access point" | "accessible from the exterior of the pavilion via a slit that permits access only to the compartment (camera pocket) and not any other opening in the pod or fabric pavilion" | "reachable from outside the pavilion through an access point" |

      The parties dispute which construction of the term "accessible from the exterior of the pavilion via an opening" is supported by the plain language of the claim and the specification. The relevant claim language states: "wherein, when the pod is in an open, use position, the compartment is ***accessible from the exterior of the pavilion via an opening***." '450 patent, claim 1 (emphasis added).

      SlumberPod argues that its construction is supported by the plain and ordinary meaning of the claims and the specification, and that Keezio's construction improperly limits the claim. Opening Brief at 24.  Keezio argues its construction is properly limiting because the camera pocket is only described in the specification in one way: "A camera pocket **298** with a slit to insert

14

1  a camera . . . ." Responsive Brief at 20; *see* '450 patent, 11:25-29. Keezio argues that the term
2  should be construed within the limitations in the specification.
3        The Court adopts SlumberPod's construction. The construction of "access point" is
4  supported by the plain language of the claim; "access point" accounts for the phrase "accessible
5  . . . via an opening" in the claim language. While Keezio's construction tracks the specification
6  language, it adds a limitation by construing the word "opening" as only a "slit." Keezio's
7  construction improperly imports limitations from preferred embodiments and should be rejected.
8  *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) (courts "cannot
9  import limitations from the preferred embodiments into the claim, [and] also should not normally
10 interpret a claim term to exclude a preferred embodiment."). The Court construes "accessible
11 from the exterior of the pavilion via an opening" to mean "reachable from outside the pavilion
12 through an access point."
13       **IT IS SO ORDERED.**
14 Dated: December 1, 2025

Noël Wise
United States District Judge