**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**San Francisco Division**

| | | |
|---|---|---|
| **KEEZIO GROUP LLC,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br><br><br>**SLUMBERPOD, LLC,**<br><br>**Defendant/Counterclaim Plaintiff** | ) | **Case No. 23-cv-06288-PHK** |

**JURY INSTRUCTIONS**

DATED: ___________

_______________________________________________
UNITED STATES MAGISTRATEJUDGE

# TABLE OF CONTENTS


| Number | Title |
|---|---|
| 1 | What a Patent Is and How One Is Obtained |
| 2 | Patent at Issue |
| 3 | Summary of Contentions |
| 4 | Outline of Trial |
| 5 | Summary of Contentions |
| 6 | Interpretation of Claims |
| 7 | Infringement – Burden of Proof |
| 8 | Direct Infringement |
| 9 | Literal Infringement |
| 10 | Willful Infringement |
| 11 | Invalidity – Burden of Proof |
| 12 | Invalidity – Perspective of One of Ordinary Skill in the Art |
| 13 | Damages – Burden of Proof |
| 14 | Lost Profits – Generally |
| 15 | Lost Profits – Factors to Consider |
| 16 | Lost Profits – Non-Infringing Substitute |
| 17 | Lost Profits – Price Erosion |
| 18 | Reasonable Royalty – Entitlement |
| 19 | Reasonable Royalty – Definition |
| 20 | Reasonable Royalty – Multiple Patents |
| 21 | Date of Commencement – Products |
| 22 | Glossary |

**Undisputed Jury Instruction 1**

**What a Patent Is and How One Is Obtained**

This case involves a dispute relating to two (2) United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed. As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both. That information is called "prior art." Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. Sometimes, patents are issued after appeals with the PTO or to a court. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**Authority:**

Northern District of California Model Patent Jury Instructions; Instruction A.1 (modified)

**Undisputed Jury Instruction 2**

**Patent at Issue**

This case involves two (2) United States patents.

The first is U.S. Patent No. 11,617,450, issued on April 4, 2023, entitled "CRIB ACCESSORY." You will hear this patent referred to as the '450 Patent.

The second is U.S. Patent No. 12,048,381, issued on July 30, 2024, also entitled "CRIB ACCESSORY." You will hear this patent referred to as the '381 Patent. The '381 Patent is what is known as a continuation of the '450 Patent.

[The court should show the jury the patent at issue and point out the parts including the specification, drawings and claims including the claims at issue.]

**<u>Authority</u>:**

Northern District of California Model Patent Jury Instructions; Instruction A.2 (modified)

**Undisputed Jury Instruction 3**

**Summary of Contentions**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are SlumberPod LLC and Keezio Group, LLC. As I have explained, the case involves two (2) United States patents. Both patents were obtained by inventors Kathryn Beck Mallory, Louise Wingfield Childs, Maureen Carroll, Stephen Jones and Jeffrey Juskowich, and assigned by those inventors to SlumberPod. For convenience, the parties and I will often refer to these patents by the last three numbers of their patent numbers: the ‘450 and ‘381 patents.

SlumberPod filed suit in this court seeking money damages from Keezio for allegedly infringing the ‘450 and ‘381 patents by making, importing, selling, and offering for sale products that SlumberPod argues are covered by Independent Claim 1, Dependent Claim 7, Dependent Claim 15, and Dependent Claim 18 of the ‘450 Patent and Independent Claim 1, Dependent Claim 3, Dependent Claim 10, Dependent Claim 12, and Independent Claim 17 of the ‘381 Patent. The products that are alleged to infringe are two versions of an infant sleep enclosure sold under the DayDreamer name:

Original DayDreamer: Part No. HP-DDT-R

Redesigned DayDreamer: Part No. HP-DDT-BK

Keezio denies that it has infringed Independent Claim 1, Dependent Claim 7, Dependent Claim 15, and Dependent Claim 18 of the ‘450 Patent and Independent Claim 1, Dependent Claim 3, Dependent Claim 10, Dependent Claim 12, and Independent Claim 17 of the ‘381 Patent. Keezio also argues that those claims are invalid. Invalidity is a defense to infringement.

Your job will be to decide whether Independent Claim 1, Dependent Claim 7, Dependent Claim 15, and Dependent Claim 18 of the ‘450 Patent and Independent Claim 1, Dependent Claim 3, Dependent Claim 10, Dependent Claim 12, and Independent Claim 17 of the ‘381 Patent have been infringed and whether those claims are invalid. If you decide that any claim of the ‘450 and ‘381 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SlumberPod to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Before you decide whether Keezio has infringed the claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

**<u>Authority</u>:**

Northern District of California Model Patent Jury Instructions; Instruction A.3 (modified)

**Undisputed Jury Instruction 4**

**Outline of Trial**

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.

SlumberPod will present its evidence on its contention that some claims of the ‘450 and ‘381 patents have been infringed by Keezio and that the infringement has been willful. These witnesses will be questioned by SlumberPod's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. Finally SlumberPod's counsel has the opportunity to question the witness one more time in what is called redirect examination. To prove infringement of any claim, SlumberPod must persuade you that it is more likely than not that Keezio has infringed that claim. To persuade you that any infringement was willful, SlumberPod must prove that it is highly probable that the infringement was willful.

After SlumberPod has presented its witnesses, Keezio will call its witnesses, who will also be examined and subject to cross-examination and redirect. Keezio will present its evidence that the claims of the ‘450 and ‘381 patents are invalid. To prove invalidity of any claim, Keezio must persuade you that it is highly probable that the claim is invalid. In addition to presenting its evidence of invalidity, Keezio will put on evidence responding to SlumberPod's infringement and willfulness contentions.

SlumberPod will then return and will put on evidence responding to Keezio's contention that the claims of the ‘450 and ‘381 patents are invalid. SlumberPod will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Keezio of non-infringement or lack of willfulness.

Finally, Keezio will have the option to put on "rebuttal" evidence to any evidence offered by SlumberPod on the validity of the claims of the ‘450 and ‘381 patents .

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

The parties may present the testimony of a witness by reading from his or her deposition transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. After the instructions and closing arguments, you will then decide the case.

**Authority:**

Northern District of California Model Patent Jury Instructions; Instruction A.5 (modified)

**Undisputed Jury Instruction 5**

**Summary of Contentions**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, SlumberPod seeks money damages from Keezio for allegedly infringing the ‘450 and ‘381 patents by making, importing, selling and offering for sale products that SlumberPod argues are covered by Independent Claim 1, Dependent Claim 7, Dependent Claim 15, and Dependent Claim 18 of the ‘450 Patent and Independent Claim 1, Dependent Claim 3, Dependent Claim 10, Dependent Claim 12, and Independent Claim 17 of the ‘381 Patent. These are the asserted claims of the ‘450 and ‘381 patents. The products that are alleged to infringe are the Original DayDreamer and the Redesigned DayDreamer.

Keezio denies that it has infringed the asserted claims of the patents and argues that, in addition, the asserted claims of the patents are invalid.

Your job is to decide whether the asserted claims of the patents have been infringed and whether any of the asserted claims of the patents are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SlumberPod to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

**<u>Authority</u>:**

Northern District of California Model Patent Jury Instructions; Instruction B.1 (modified)

## Undisputed Jury Instruction 6

## Interpretation of Claims

Before you decide whether Keezio has infringed the claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patents that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

[The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:

I have already determined the meaning of certain terms of the claims of the ‘450 and ‘381 patents. You have been given a document reflecting those meanings. For a claim term for which I have not provided a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.]

| **Claim Term** | **Court’s Claim Construction** |
|---|---|
| “compartment” | “a separate division or section, including but not limited to, a pocket” |
| “crib” | “crib, baby bed, portable play-yard and similar beds designed for babies to sleep in” |
| “configured to fit the crib therein” | “set up to contain a crib, baby bed, portable play-yard and similar beds designed for babies to sleep in inside” |

| | |
|---|---|
| "configured to fit the play yard therein" | "set up to contain a portable play-yard inside" |
| "included in . . . the fabric pavilion" | "integrated into the fabric material that forms the pavilion" |
| "configured for attachment to the fabric pavilion" | "set up to be connected to the fabric material that forms the pavilion" |
| "configured to provide a baby monitor with visual access to the inside of the pod" | "set up to give visual access to the inside of the pavilion to a baby monitor" |
| "flexible frame" | Plain and ordinary meaning |
| "accessible from the exterior of the pavilion via an opening" | "reachable from outside the pavilion through an access point" |

**Authorities:**

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

Northern District of California Model Patent Jury Instructions; Instruction 2.1, B.2 (modified)

**Undisputed Jury Instruction 7**

**Infringement – Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether SlumberPod has proven that Keezio has infringed one or more of the asserted claims of the '450 and '381 patents. To prove infringement of any claim, SlumberPod must persuade you that it is more likely than not that Keezio has infringed that claim.

**Authorities:**

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

Northern District of California Model Patent Jury Instructions; 3.1, B.3 (modified)

**Undisputed Jury Instruction 8**

**Direct Infringement**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Keezio has made, sold, offered for sale or imported within the United States a product covered by a claim of the ‘450 and ‘381 patents. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether Keezio's product infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both SlumberPod's commercial product and Keezio's accused products. However, in deciding the issue of infringement you may not compare Keezio's accused products to SlumberPod's commercial product. Rather, you must compare Keezio's accused products to the claims of the ‘450 and ‘381 patents when making your decision regarding infringement.

Whether or not Keezio knew its products infringed or even knew of the patent does not matter in determining direct infringement.

**Authorities**:

35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

Northern District of California Model Patent Jury Instructions; 3.2, B.3 (modified)

**Undisputed Jury Instruction 9**

**Literal Infringement**

To decide whether Keezio's products literally infringe a claim of the '450 and '381 patents , you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, Keezio's product literally infringes that claim. If, however, Keezio's product does not have every requirement in the patent claim, Keezio's product does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Keezio's product. The fact that Keezio's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

**Authorities**:

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

Northern District of California Model Patent Jury Instructions; 3.3, B.3 (modified)

**Undisputed Jury Instruction 10**

**Willful Infringement**

In this case, SlumberPod argues that Keezio willfully infringed SlumberPod's patents.

To prove willful infringement, SlumberPod must persuade you that Keezio infringed a valid and enforceable claim of SlumberPod's patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, SlumberPod must persuade you that it is more likely true than not true that Keezio intentionally ignored or recklessly disregarded that claim. You must base your decision on Keezio's knowledge and actions at the time of infringement. Evidence that Keezio had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Keezio engaged in additional conduct evidencing deliberate or reckless disregard of SlumberPod's patent rights.

In deciding whether Keezio willfully infringed, you should consider all of the facts surrounding the infringement including: whether Keezio intentionally copied SlumberPod's patented technology in developing the accused product; whether Keezio knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Keezio had a reasonable belief that at the time of infringement that its products did not infringe the asserted patents or that the patents were invalid.

**Authorities:**

35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. __, 136 S. Ct. 1923 (2016); 35 U.S.C. § 298.

Northern District of California Model Patent Jury Instructions; 3.8, B.3 (modified)

**Undisputed Jury Instruction 11**

**Invalidity – Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether Keezio has proven that Independent Claim 1, Dependent Claim 7, Dependent Claim 15, and Dependent Claim 18 of the '450 Patent and Independent Claim 1, Dependent Claim 3, Dependent Claim 10, Dependent Claim 12, and Independent Claim 17 of the '381 Patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Keezio must persuade you that it is highly probable that the claim is invalid.

During this case, Keezio has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '450 and '381 patents . Keezio contends that such prior art invalidates certain claims of the '450 and '381 patents . In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '450 and '381 patents. Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Keezio's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

**Authorities:**

*Microsoft Corp. v. i4i LTD Partnership*, 131 S.Ct. 2238, 2242, 2251, __ U.S. __ (2011); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

Northern District of California Model Patent Jury Instructions; 4.1a, B.4.1 (modified)

**Undisputed Jury Instruction 12**

**Invalidity – Perspective of One of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patents. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

SlumberPod contends that the level of ordinary skill in the field was a bachelor's degree in mechanical engineering or a related discipline and two (2) or more years of relevant industry, research, or other experience related to engineering and design of consumer products.

Keezio contends that the level of ordinary skill in the field was a Bachelor of Science degree in mechanical engineering or the equivalent, or four (4) years of experience in the field.

**Authorities:**

35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 3 (1966).

Northern District of California Model Patent Jury Instructions; 4.1b; B.4.1 (modified)

**Undisputed Jury Instruction 13**

**Damages – Burden of Proof**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Keezio infringed any valid claim of the '450 and '381 patents, you must then determine the amount of money damages to be awarded to SlumberPod to compensate it for the infringement.

The amount of those damages must be adequate to compensate SlumberPod for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

SlumberPod has the burden to persuade you of the amount of its damages. You should award only those damages that SlumberPod more likely than not suffered. While SlumberPod is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. SlumberPod is not entitled to damages that are remote or speculative.

**Authorities:**

35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-32 (Fed. Cir. 2014).

Northern District of California Model Patent Jury Instructions; 5.1; B.5 (modified)

**Undisputed Jury Instruction 14**

**Lost Profits -- Generally**

In this case, SlumberPod seeks to recover lost profits for some of Keezio's sales of infringing products, and a reasonable royalty on the rest of Keezio's sales.

To recover lost profits for infringing sales, SlumberPod must show that but for the infringement there is a reasonable probability that it would have made sales that Keezio made of the infringing products. SlumberPod must show the share of Keezio's sales that it would have made if the infringing product had not been on the market.

**Authorities:**

*Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012); *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 Fed. Appx. 987, 996 (Fed. Cir. 2013).

Northern District of California Model Patent Jury Instructions; 5.2; B.5 (modified)

## Undisputed Jury Instruction 15

## Lost Profits – Factors to Consider

SlumberPod is entitled to lost profits if it proves all of the following:

(1) that there was a demand for the patented product;

(2) that there were no acceptable non-infringing substitutes for the product for which SlumberPod seeks lost profits, or, if there were, the number of sales made by Keezio that SlumberPod would have made despite the availability of any acceptable non-infringing substitutes;

(3) that SlumberPod had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which SlumberPod seeks an award of lost profits; and

(4) the amount of profit that SlumberPod would have made if Keezio had not infringed.

**Authorities:**

*Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1360-61 (Fed. Cir. 2012).

Northern District of California Model Patent Jury Instructions; 5.3; B.5 (modified)

**Undisputed Undisputed Jury Instruction 16**

**Lost Profits – Non-Infringing Substitute**

An acceptable non-infringing substitute must include the advantages of the patented invention that were important to the actual buyers of the infringing product. A non-infringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of the patented feature from the product altogether. To be an acceptable substitute, however, the substitute must have been available during the period when the infringing product was sold. A substitute may be considered available as a substitute even if it was not on sale during the infringement period, if, during that period, a competitor or Keezio had all the necessary equipment, materials, know-how, and experience to design and manufacture a non-infringing substitute and sell it to its customers. If some of SlumberPod's customers would have been just as likely to purchase a non-infringing acceptable product as to purchase SlumberPod's product, then SlumberPod has not shown that but for Keezio's sales, it would have made the sales that Keezio made. Even if you find that Keezio's infringing sales and SlumberPod's patented products were the only ones with the advantages of the patented invention, SlumberPod is nevertheless required to prove that it, in fact, would have made Keezio's infringing sales.

**Authorities**:

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1162 (6th Cir. 1978); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

Northern District of California Model Patent Jury Instructions; 5.3b; B.5 (modified)

**Undisputed Jury Instruction 17**

**Lost Profits – Price Erosion**

SlumberPod can recover additional damages if it can show to a reasonable probability that, if there had been no infringement, SlumberPod would have been able to charge higher prices for some of its products. In that case, you may also award as additional damages the amount represented by the difference between the amount of profits that SlumberPod would have made by selling its product at the higher price and the amount of profits SlumberPod actually made by selling its product at the lower price that SlumberPod charged for its product. This type of damage is referred to as price erosion damage.

If you find that SlumberPod suffered price erosion, you may also use the higher price in determining SlumberPod's lost profits from sales lost because of the infringement. In calculating a patentee's total losses from price erosion, you must take into account any drop in sales that would have resulted from a higher price.

You may also award as damages the amount of any increase in costs of SlumberPod, such as additional marketing costs, caused by competition from the infringing product.

**Authorities:**

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1485 (Fed. Cir. 1990); *Wechsler v. Macke Int. Trade, Inc.*, 486 F. 3d 1286, 1293-94 (Fed. Cir. 2007).

Northern District of California Model Patent Jury Instructions; 5.5; B.5 (modified)

**Undisputed Jury Instruction 18**

**Reasonable Royalty -- Entitlement**

If SlumberPod has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then SlumberPod should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

**Authorities**:

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

Northern District of California Model Patent Jury Instructions; 5.6; B.5 (modified)

**Undisputed Jury Instruction 19**

**Reasonable Royalty – Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that both parties would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. You should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused product.

(2) The value that factors other than the claimed invention contribute to the accused product.

(3) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $ 1, and the licensee sold 200 nails, the base revenue would be $ 200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $ 2, or the rate of 0.01 times the base revenue of $ 200. By contrast, if you find the rate to be 5%, the royalty would be $ 10, or the rate of 0.05 times the base revenue of $ 200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

If the patent covers only part of the product that Keezio sells, then the base would normally be only that feature or component. For example, if you find that for a $ 100 car, the patented feature is the tires which sell for $ 5, the base revenue would be $ 5.

However, in a circumstance in which the patented features are the reason customers buy the whole product, the base revenue may be the value of the whole product.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have

both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

**Authorities**:

*Garretson v. Clark*, 111 U.S. 120 (1884); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-34 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012); *Lucent v. Gateway*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009) ; *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

Northern District of California Model Patent Jury Instructions; 5.7; B.5 (modified)

**Undisputed Jury Instruction 20**

**Reasonable Royalty – Multiple Patents**

If you find that Keezio infringed more than one patent, even by a single infringing act, then you may award separate royalties to SlumberPod for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

**Authorities**:

*Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), reversed on other ground, *Merck KGaA v. Integra Lifesciences I., Ltd.*, 545 U.S. 193 (2005); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

Northern District of California Model Patent Jury Instructions; 5.8; B.5 (modified)

**Undisputed Jury Instruction 21**

**Date of Commencement -- Products**

Damages that SlumberPod may be awarded by you commence on the date that Keezio has both infringed and been notified of the ‘450 and ‘381 patents:

Since SlumberPod marks the product, then damages begin without the requirement for actual notice under the following circumstances:

> If the ‘450 or ‘381 patents were granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or
>
> If the ‘450 or ‘381 patents were granted after the infringing activity began as determined by you, damages should be calculated as of April 4, 2023 or July 30, 2024, respectively.

**Authorities**:

35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

Northern District of California Model Patent Jury Instructions; 5.9; B.5 (modified)

**Undisputed Jury Instruction 22**

**Glossary**

Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Continuation Application**: A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent. When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

**Authority:**

Northern District of California Model Patent Jury Instructions, C.1 (modified)