R. Joseph Trojan, CA Bar No. 137,067
Trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
Dang@trojanlawoffices.com
Francis Z. Wong, CA Bar No. 284,946
Wong@trojanlawoffices.com
**TROJAN LAW OFFICES, P.C.**
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Plaintiff
Keezio Group, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Keezio Group, LLC,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>SlumberPod LLC,<br><br>Defendant/Counterclaim Plaintiff. | **Case No:** 3:23-cv-06288-PHK<br><br>**KEEZIO GROUP, LLC'S TRIAL BRIEF**<br><br>Trial Date: October 14, 2026<br><br>Courtroom: F, 15th Floor<br><br>**HON. PETER H. KANG** |

Pursuant to the Court's Trial Order (Dkt. 174), Defendant Keezio Group, LLC ("Keezio") respectfully submits this trial brief.

## I. INTRODUCTION

Only SlumberPod's patent counterclaims remain for trial. SlumberPod contends that Keezio's Hiccapop DayDreamer literally infringes specified claims of U.S. Patent Nos. 11,617,450 (the "'450 Patent") and 12,048,381 (the "'381 Patent"), that any infringement was willful, and that SlumberPod is entitled to lost profits, price-erosion damages, increased advertising costs, a reasonable royalty, enhanced damages, an injunction, and fees. Keezio disputes each proposition. The jury will decide the factual disputes the Court identified at summary judgment: infringement, the underlying facts bearing on obviousness, willfulness, and compensatory damages. ECF 145 at 3-5.

The trial evidence will show two independent reasons why SlumberPod cannot prevail on its infringement claims. First, Keezio will prove by clear and convincing evidence that the asserted claims are obvious. The claimed combination of a crib canopy, flexible crossed supports, pockets or compartments, infant monitoring, see-through tent material, or exterior pass-through access are not inventive. The LaMantia, Neveling, and Sumner references, considered with the ordinary knowledge of a skilled tent designer, supply those known features and provide concrete reasons to combine them for their known purposes. Keezio's experts Dr. James William Jones and Shon Hancock will explain why that combination would have produced the predictable result recited by the claims.

Second, literal infringement requires proof that every claim limitation is present. Every asserted independent claim requires a compartment "configured to provide a baby monitor with visual access to the inside of the pod." The Court construed that phrase to mean "set up to give visual access to the inside of the pavilion to a baby monitor." ECF 72 at 11-13. The construction does not require any particular material, but it preserves the functional requirement of visual access. SlumberPod cannot prove the that a monitor placed in the compartment of the accused product practices the claimed visual access limitation.



TROJAN LAW OFFICES
BEVERLY HILLS

Even if SlumberPod were to prove infringement of a valid claim, the damages evidence does not justify treating every DayDreamer sale and every change in SlumberPod's business as a patent-caused loss. SlumberPod's expert Mark Gallagher acknowledges a market containing many competing products, yet his lost-profits model assumes away acceptable noninfringing alternatives and attributes broad market effects to Keezio's entry. Keezio's economist Minh P. Doan will present the contrary market evidence and explain why damages, if any, must be tied to the incremental value and economic effect of the claimed invention rather than to unpatented features or the existence of a lower-priced competitor. Additionally, the evidence will make clear that Mr. Gallagher has no factual basis from which to calculate a reasonable royalty. The Court has already held that these disputes are for the jury and that Keezio may test Gallagher's assumptions through cross-examination and contrary evidence. Keezio will do so at trial.

## II. ISSUES FOR TRIAL

The issues are: (1) whether SlumberPod proves by a preponderance of the evidence that each Accused Product satisfies every limitation of the asserted claims; (2) whether Keezio proves by clear and convincing evidence that one or more asserted claims are obvious under 35 U.S.C. § 103; (3) if a valid claim is infringed, whether SlumberPod proves willfulness; (4) if liability is established, what compensatory damages were caused by infringement; and (5) after the verdict, whether SlumberPod can satisfy the separate standards for enhanced damages, injunctive relief, or exceptional-case fees.

## III. RELEVANT BACKGROUND

The parties have stipulated that SlumberPod owns the '450 Patent, issued April 4, 2023, and the '381 Patent, issued July 30, 2024, and that both claim an August 31, 2016 priority date. ECF 196 at 11-12. Keezio began manufacturing the DayDreamer in August 2023 and brought it to market in November 2023. The accused products are the original and revised DayDreamer Blackout Tent for Pack 'n Play. *Id.*

SlumberPod elected to try literal infringement of claims 1, 7, 15, and 18 of the '450 Patent and claims 1, 3, 10, 12, and 17 of the '381 Patent. ECF 196 at 2. Keezio denies infringement and willfulness and asserts obviousness. *Id.* The Court denied both sides' summary-judgment requests



TROJAN LAW OFFICES
BEVERLY HILLS

on the patent issues because genuine factual disputes remain. In particular, the Court held that a reasonable jury could differ over whether the accused product has a compartment providing the claimed "visual access," and that disputes over the scope of the prior art, differences from the claims, and ordinary skill must be resolved at trial. ECF 145 at 3-4.

The parties are bound by the Claim Construction Order. Among other constructions, "compartment" means "a separate division or section, including but not limited to, a pocket"; "configured to provide a baby monitor with visual access to the inside of the pod" means "set up to give visual access to the inside of the pavilion to a baby monitor"; "flexible frame" carries its plain and ordinary meaning; and "accessible from the exterior of the pavilion via an opening" means "reachable from outside the pavilion through an access point." ECF 72 at 5-15; ECF 196 at 12.

## IV. ARGUMENT

### A. The Asserted Claims Are Invalid as Obvious Under § 103.

#### 1. The governing obviousness inquiry is flexible and asks what a skilled artisan would have understood before August 31, 2016.

A patent is presumed valid, and Keezio bears the burden of proving invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Obviousness under 35 U.S.C. § 103 is ultimately a legal question based on factual findings concerning the scope and content of the prior art, differences between the prior art and the claims, the level of ordinary skill, and objective indicia. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), rejects a rigid approach. A combination of familiar elements according to known methods is likely obvious when it does no more than yield predictable results, and the factfinder may consider common sense, ordinary creativity, and the inferences a skilled artisan would draw. *Id.* at 416-21. The obviousness case here rests on identified prior-art teachings and industry knowledge, not hindsight.

#### 2. The prior art supplied the claimed elements and a reason to combine them for their ordinary functions.



TROJAN LAW OFFICES
BEVERLY HILLS

Keezio's experts will present a concrete, feature-by-feature account of the prior art. LaMantia '584 discloses a crib cover having a fabric canopy supported by flexible rod-like members, including crossed support geometry, and pockets formed at the canopy corners. Jones Opening Rpt. at 10-17. Its collapsible support structure performs the familiar tent functions of keeping fabric deployed and permitting compact storage. *Id.* Neveling '621 supplies the known infant-monitoring context. Sumner '260 teaches see-through mesh panels for visibility and a pass-through port through a tent wall, showing that visibility through tent material and exterior access through an opening were known design tools. *Id.* at 14-17.

Those teachings fit together for straightforward reasons to render the patents obvious. A person designing a portable crib enclosure already containing storage pockets would have reason to use a pocket to hold an infant monitor; a designer who wanted the monitor to view inside the enclosure would select a known visibility-providing material or structure; and a designer who wanted the user to place or remove the monitor without opening the main door would use an exterior-facing opening or pass-through. Dr. Jones will testify that these are simple structural choices with predictable results. Mr. Hancock, who has more than two decades of experience in tent and portable-shelter product design, likewise concludes that pockets, pouches, sleeves, and integrated compartments were routine and commercially widespread before the priority date and that applying those ordinary tent features to LaMantia's crib canopy would not require inventive skill. Hancock Rpt. at 1, 8-11.

The same evidence answers SlumberPod's anticipated hindsight argument. Keezio does not start with the patent and search randomly for disconnected pieces. The references concern the same field of fabric tent enclosures, and each proposed combination preserves the known function of the component being used. The reason to combine comes from ordinary design objectives—supporting a canopy, storing an item, monitoring a child, seeing through an enclosure, and reaching an item from outside.

**3. The asserted dependent claims add routine geometry, materials, and sizing.**

The dependent claims do not supply a nonobvious inventive concept. Claim 7 of the '450 Patent and claim 3 of the '381 Patent add panel geometry and placement of the access panel; Dr.



TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

Jones will explain that the prior art depicts the same conventional wider-base enclosure geometry. Claim 15 of the ’450 Patent and claim 10 of the ’381 Patent add breathable, light-limiting fabric. Breathability and light control were known material properties in tents, and selecting a darker or light-limiting fabric for tents to function as a sleep enclosure yields its expected result. Claim 18 of the ’450 Patent and claim 12 of the ’381 Patent add dimensions permitting the pod to be lifted over the crib, a routine sizing choice for a crib cover. Jones Opening Rpt. at 17-20.

Claim 17 of the ’381 Patent changes the enclosed article from a “crib” to a “play yard,” while retaining the same basic combination. Under the Court’s constructions, those are closely related child sleep enclosures. ECF 72 at 7-9. Dr. Jones will explain that this change does not alter the obviousness analysis. Jones Opening Rpt. at 20-21.

**4. Objective-indicia evidence cannot substitute for a nexus to the claimed combination.**

SlumberPod is expected to rely on commercial success, praise, long-felt need, and alleged copying. Such evidence must be considered, but it must be tied to the merits of the claimed invention. See *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373-74 (Fed. Cir. 2019). Evidence that consumers value a dark, portable, well-ventilated sleep enclosure, brand reputation, ease of setup, or other ordinary tent features does not by itself establish a nexus to the claimed combination of compartment, visual access, exterior access, and crossed flexible supports. The jury should weigh objective indicia only to the extent SlumberPod proves that connection.

**B. SlumberPod Cannot Establish Literal Infringement Without Proving the Claimed “Visual Access” Function.**

SlumberPod bears the burden of proving literal infringement by a preponderance of the evidence. 35 U.S.C. § 271(a); N.D. Cal. Model Patent Jury Instructions 3.1-3.3. Literal infringement requires every limitation of the claim. That requirement matters here because the same “visual access” limitation appears in every asserted independent claim: claim 1 of the ’450 Patent and claims 1 and 17 of the ’381 Patent.

The Court’s construction resolves what the phrase means but not whether the Accused Products satisfy it. The Court rejected a construction limited to clear vinyl or another particular

material; it did not erase the words "visual access" from the claims. ECF 72 at 11-13. SlumberPod therefore must prove that the accused compartment is set up to give a baby monitor visual access to the inside of the pavilion when the monitor is in the compartment. The Court has already identified that exact issue as a genuine factual dispute for the jury. ECF 145 at 4.

Dr. Jones will explain the gap in SlumberPod's proof. According to his rebuttal report, Dr. Cameron identifies a camera pocket, a Velcro retainer, and product materials indicating where a monitor may be placed, but she does not test or otherwise demonstrate the claimed function. Her report contains no monitor-point-of-view testing, measurements, or comparable analysis showing that a monitor placed in the accused compartment receives visual access to the inside of the pavilion in the product's intended use. Jones Rebuttal Rpt. at 5-9. Evidence that a device can be retained in a pocket establishes location, not the separate functional requirement of visual access.

This is not an invitation to reargue claim construction or impose a special transparency threshold. Keezio's point is evidentiary: under the Court's broad construction, SlumberPod still must prove the function the claim actually recites. A jury may not infer that function merely from the label "camera pocket." If SlumberPod fails to carry that burden for an independent claim, the dependent claims that incorporate that independent claim necessarily fail as well.

**C. The Evidence Does Not Establish Willful Infringement.**

Willfulness cannot exist unless SlumberPod first proves infringement of a valid claim. The focus is the accused infringer's subjective conduct, and knowledge of a patent alone is not enough. ECF 196 at 17; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-05 (2016); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021). The Court, not the jury, separately decides whether any proven conduct warrants enhanced damages under § 284.

The chronology matters. SlumberPod relies in part on evidence that Mr. Clute saw the SlumberPod product on *Shark Tank* in January 2020 and later obtained a SlumberPod product. ECF 196 at 4. But the '450 Patent did not issue until April 2023 and the '381 Patent did not issue until July 2024. Product awareness years before issuance does not establish deliberate infringement of patent claims that did not yet exist. The jury must instead assess what Keezio knew and did during the period of any proven infringement.



TROJAN LAW OFFICES
BEVERLY HILLS

Keezio will present its substantive noninfringement and invalidity evidence, including the disputed visual-access issue and the prior-art combinations described above. Those positions do not themselves foreclose willfulness, but they provide the factual context in which the jury must decide whether Keezio deliberately infringed rather than merely competed while the parties disputed claim scope, infringement, and validity. The Court's summary-judgment order confirms that the infringement and obviousness disputes are genuine jury issues. ECF 145 at 3-4.

**D. SlumberPod Must Prove Patent-Caused Damages, Not Merely the Effects of a Competitor's Market Entry.**

**1. Lost profits require a reliable but-for reconstruction that accounts for acceptable noninfringing alternatives.**

Section 284 compensates injury caused by infringement. To recover lost profits, a patentee must establish a reasonable probability that, but for infringement, it would have made the claimed sales. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). The familiar *Panduit* framework asks for proof of demand, absence of acceptable noninfringing substitutes, capacity, and the amount of profit. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). The but-for world must be reconstructed on sound economic proof rather than an assumption that each accused sale belongs to the patentee. See *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).

Mr. Gallagher's own report acknowledges "many competing products on the market," yet states that he was "advised by SlumberPod and counsel" that no acceptable noninfringing alternative existed. Gallagher Rpt. paras. 55-56. That premise will be tested at trial. The Joint Final Pretrial Statement identifies, among other evidence, the YABORAS and WANRU blackout-tent products and technical testimony from Dr. Jones concerning noninfringement. ECF 196 at 9-10, 14. Under *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), an acceptable noninfringing alternative can defeat lost profits on sales that would have gone to that alternative in the but-for world.

Ms. Doan will also explain why a two-player or one-for-one diversion assumption does not fit the evidence. The marketplace contains numerous blackout sleep products, multiple price tiers,



TROJAN LAW OFFICES
BEVERLY HILLS

and product attributes unrelated to the asserted claims. She will testify that Gallagher does not adequately account for this broader competition, treats the market entry of the DayDreamer as though it were identical to patent infringement, and—at least in his report—includes projected sales of inventory rather than limiting the analysis to realized infringing sales. Doan Rpt. at 19-40. The jury should award lost profits only for sales SlumberPod proves it probably would have made in a properly reconstructed noninfringing market.

**2. Price erosion and increased advertising costs require their own causal proof.**

Price erosion cannot be inferred from temporal proximity alone. A patentee seeking price-erosion damages must prove the price it would have charged but for infringement and account for the effect that higher prices would have had on demand. See *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001). SlumberPod therefore must distinguish infringement-caused price changes from promotions, seasonal demand, changing costs, other competitors, and ordinary pricing strategy.

The same causation principle applies to SlumberPod's claimed increased advertising expense. The question is not whether SlumberPod spent more on Amazon advertising after Keezio entered the market, but whether and to what extent infringement caused the incremental expenditure. Ms. Doan will testify that Gallagher's analysis does not isolate the effect of the accused feature from other economic factors affecting pricing and advertising. Doan Rpt. at 35-40. An award for business expenditures that would have occurred for independent reasons would overcompensate rather than compensate for infringement.

**3. Any reasonable royalty must be apportioned to the value of the claimed invention.**

If SlumberPod proves infringement of a valid claim but does not prove lost profits for a particular sale, § 284 provides for no less than a reasonable royalty. The hypothetical negotiation may be evaluated using the *Georgia-Pacific* factors. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). But the royalty must value the patented invention, not



TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

unpatented product attributes. See *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

SlumberPod seeks a per-unit royalty. ECF 196 at 7. However, the royalty is not based on evidence. Mr. Gallagher did not even perform a calculation to arrive at that figure. Ms. Doan will explain that the proposed royalty does not adequately isolate the incremental economic value of the claimed configuration, relies on licensing evidence whose technical and economic comparability is disputed, assumes away non-infringing alternatives, and treats broader competitive effects as value of the patent. Doan Rpt. at 41-53. The jury should base any royalty on proven incremental value and a factually supported hypothetical negotiation, subject to the Court's rulings on the parties' motions in limine.

**E. SlumberPod Has Not Established a Basis for Extraordinary Equitable or Fee Relief.**

SlumberPod also requests enhanced damages, a permanent injunction, disposition of allegedly infringing products, and exceptional-case fees. ECF 196 at 7-8. Those remedies are for the Court after the jury resolves liability and damages. Enhanced damages under *Halo* are reserved for sufficiently egregious infringement behavior, not awarded automatically upon a willfulness finding. 579 U.S. at 103-06.

A permanent injunction requires proof of irreparable injury, inadequacy of legal remedies, a balance of hardships favoring injunction, and consistency with the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Keezio disputes those elements, including any causal connection between the claimed patent features and alleged irreparable harm, and will address equitable relief on the record after the verdict if necessary.

Nor is this an exceptional case merely because the parties vigorously dispute infringement and validity. Under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), a case must stand out from others based on the substantive strength of a litigating position or the unreasonable manner of litigation. Here, the Court has already found genuine disputes requiring jury resolution on infringement and obviousness. ECF 145 at 3-4. Keezio therefore respectfully submits that the present record does not support extraordinary fee relief.

## V. CONCLUSION

Keezio respectfully requests a verdict that SlumberPod has not proven infringement or willfulness and that the asserted claims are invalid as obvious. If the jury nevertheless finds infringement of a valid claim, any damages should be confined to losses SlumberPod proves were actually caused by infringement, with lost profits limited to sales supported by a market analysis, not assumptions, and any reasonable royalty apportioned to the value of the claimed invention. Keezio further requests that the Court deny enhanced damages, injunctive relief, and exceptional-case fees.

Respectfully submitted,

By:

Dated: September 30, 2026

/s/R. Joseph Trojan

R. Joseph Trojan, CA Bar No. 137,067
Dylan C. Dang, CA Bar No. 223,455
Francis Z. Wong, CA Bar No. 284,946
TROJAN LAW OFFICES, P.C.
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

**Attorneys for Plaintiff**
**Keezio Group, LLC**