United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SLUMBERPOD, LLC,<br>Plaintiff,<br>v.<br>KEEZIO GROUP,<br>Defendant. | Case No. 23-cv-06288-PHK<br>**ORDER RE: MOTIONS IN LIMINE**<br>Re: Dkts. 182, 183, 184, 185 |

The Court has received the Parties' Motions in Limine ("MIL"). [Dkts. 182, 183, 184, 185]. Having reviewed the briefing and heard oral argument at the Final Pretrial Conference, the Court resolves each of the Motions in Limine as set forth herein. The Court's statements at the Final Pretrial Conference are incorporated by reference.

**<u>SlumberPod's MIL No. 1</u>**

SlumberPod requests an "order precluding Keezio, its counsel, and its witnesses from stating, suggesting, or arguing that a product is an acceptable non-infringing alternative ('ANIA') merely because the product competes in the marketplace, does not infringe, or both." [Dkt. 182 at 2]. Keezio argues that this motion is "boilerplate, overbroad, and nonspecific" being that it "does *not* seek to exclude any specific trial evidence." [Dkt. 216 at 3 (emphasis in original)]. It is recognized that "'[m]otions in limine that seek exclusion of broad and unspecific categories of evidence [ ] are generally disfavored.'" *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 894 (N.D. Cal. 2025) (citations omitted). This motion in limine does not identify with specificity what testimony or evidence is sought to be excluded, nor at this stage is it a certainty what Keezio's counsel will argue to the jury. Accordingly, SlumberPod's motion is **DENIED WITHOUT**

**PREJUDICE** as to SlumberPod raising individual objections to specific questions and testimony or arguments made at trial, instead of granting or denying this motion on a blanket basis.

**Keezio's MIL No. 1**

Keezio moves "to impose targeted limits on the testimony of [SlumberPod's] patent damages expert, Mark Gallagher. [Dkt. 183 at 5].

**Reasonable Royalty**

Keezio moves to preclude Mr. Gallagher from offering expert testimony on reasonable royalty under Rule 37(c). *Id.* at 6. Keezio argues that SlumberPod "did not identify reasonable royalty as a damages category in its Damages Contentions," did not disclose reasonable royalty in discovery, and cannot "sneak in" reasonable royalty through Mr. Gallagher's expert report. *Id.* at 7-9.

SlumberPod responds that although its damages contentions "did not separately define reasonable royalty . . . Rule 37 does not provide that every disclosure deficiency automatically requires exclusion. It provides the opposite: the evidence itself remains usable if 'the failure was substantially justified or is harmless.'" Dkt. 211 at 6-7; Fed. R. Civ. P. 37(c)(1).

The Court notes that SlumberPod admits its Patent Local Rule 3-8 Damages Contentions "did not separately identify reasonable royalty." [Dkt. 211 at 6]. SlumberPod's approach to the Patent Damages Contentions is not to be lauded and is not the best practices under the Patent Local Rules. However, SlumberPod did in fact disclose reasonable royalty as a damages theory through both fact and expert discovery in other ways such that exclusion under Rule 37 is not justified where "the failure [to disclose] was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1); *see also Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1234-35 (N.D. Cal. 2019) (cited by both Parties here; acknowledging that revised reasonable royalty theory was not disclosed in supplemental Patent Damages Contentions but denying the motion to strike under Rule 37 where the failure to disclose was substantially justified).

Here, any failure to disclose was harmless because the fact that SlumberPod was seeking a reasonable royalty was not a surprise, despite not being disclosed in the Patent Damages Contentions. SlumberPod's First Amended Answer expressly requested "[a]n award of damages

not less than a reasonable royalty, sufficient to compensate SlumberPod for Keezio's acts of patent infringement." [Dkt. 42 at 26]. In response to Keezio's Interrogatory No. 9 (which asked SlumberPod to "[d]escribe in detail all bases for SlumberPod's damages claims against Keezio, including, but not limited to, identifying each legal theory under which damages are sought . . . ."), SlumberPod responded that "it is seeking monetary relief against Keezio, including compensatory damages, enhanced damages for willful infringement, and attorneys' fees, as set forth in its October 11, 2024 First Amended Answer and Counterclaims." [Dkt. 186-6 at 12]. When there is a finding of infringement, Section 284 of the Patent Act states that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. During the fact discovery period, Keezio did not move to compel a more detailed response to Interrogatory No. 9.

Additionally, Keezio apparently understood that the issue of reasonable royalty was an issue in this case. Keezio's Interrogatory No. 20 specifically asked SlumberPod to identify persons with whom it had communicated "regarding a reasonable royalty rate for the licensing of any of the Patents-in-Suit." [Dkt. 186-6 at 21].

Further, Mr. Gallagher disclosed his reasonable-royalty opinion in his March 27, 2026 report. *See* Dkt. 124-12 at 15-19. Keezio's damages expert Minh Doan issued a rebuttal report expressly addressing "Mr. Gallagher's Claimed Reasonable Royalty Damages," devoting multiple sections to his claimed royalty range, comparable licenses, Keezio's ability to increase price, alleged non-infringing alternatives, and Ms. Doan's own *Georgia-Pacific* analysis. *See* Dkts. 124-14 at 41-53. Ms. Doan likewise formulated her own reasonable-royalty opinion. *Id.* at 46–53. Keezio then deposed Mr. Gallagher directly on his reasonable royalty analysis which undercuts the argument that Keezio lacked an opportunity to explore or probe that opinion with him. *See* Dkt. 187 at 3 (Administrative Motion to Seal Exhibits cited in connection with MIL 1) (citing Dkt. 126-3 at 143-149 (excerpts of Gallagher deposition transcript filed under seal per Dkt. 146)).

On the record presented, there is not a sufficient showing of SlumberPod's failure to disclose throughout the discovery period in this case starting with the pleadings or prejudice to Keezio which warrants exclusion. The Court **DENIES** Keezio's motion **WITHOUT PREJUDICE** to Keezio's

ability to raise appropriate objections to Mr. Gallagher's reasonable royalty opinion testimony in response to specific questions or to Keezio's opportunity to cross-examine Mr. Gallagher on his reasonably royalty opinion.

The Court notes that Keezio filed a reply brief regarding MIL 1's arguments on the reasonable royalty issue, without leave of Court. [Dkt. 219]. The Court's Pretrial Order makes clear that the Court does not automatically include in the pretrial schedule a deadline to file reply briefs on motions in limine. *See* Dkt. 169 at 9 ("reply briefs are not permitted absent a prior Court Order upon a showing of good cause."). Keezio did not file an *ex parte* or administrative motion seeking leave to file a reply brief. As of the date of this Order, however, SlumberPod has not objected to Keezio's reply, and the reply does not materially alter the conclusion as to the reasonable royalty issue. Accordingly, while the Court does not strike the reply brief and has considered it, that reply brief does not persuasively alter the Court's analysis and thus there is no prejudice to SlumberPod in any event.

**<u>Lost Profits – Mr. Gallagher</u>**

Keezio seeks an Order excluding Mr. Gallagher's lost profits opinion on various grounds. [Dkt. 183 at 10-15]. Keezio argues that Mr. Gallagher improperly relied on certain assumptions based on communications from SlumberPod's counsel. *Id.* at 11. Keezio argues that Mr. Gallagher's methodology was also deficient because he failed to consider certain evidence. *Id.* at 14.

SlumberPod argues that Keezio's motion should be denied, because Keezio seeks to relitigate arguments already resolved on summary judgment and on *Daubert* motions practice. [Dkt. 211 at 5-6]. In Keezio's cross-motion for summary judgment, Keezio sought summary judgment against SlumberPod's lost profits claim and, as to the *Daubert* issues, Keezio also sought to exclude Mr. Gallagher's opinion testimony on lost profits on the same grounds asserted now. [Dkt. 122 at 8; Dkt. 127 at 4]. Judge Wise held that damages causation was "a question of fact for the jury" and denied Keezio's cross-motion for summary judgment on damages. [Dkt. 145 at 5]. On the motion to strike or exclude Mr. Gallagher's opinion, Judge Wise held that "Keezio has not demonstrated that Mr. Gallagher's methodology suffers from serious flaws. Instead, Keezio primarily challenges

United States District Court
Northern District of California

Mr. Gallagher's assumptions that serve as support for his opinions." *Id.* at 6.

A Party may not present an argument in a motion in limine which has already been decided on a previous motion. *See Venture Corp. v. Barrett*, No. 5:13–cv–03384–PSG, 2015 WL 2088999, at *4 (N.D. Cal. May 5, 2015) (denying motions in limine which "rehash the same arguments" made in support of an earlier motion for partial summary judgment which the court previously ruled on). As Judge Wise previously ruled, "[i]f Keezio believes Mr. Gallagher's opinions are not credible or sufficiently supported by his assumptions, Keezio should cross examine him accordingly; exclusion is not the proper 'remedy.'" [Dkt. 145 at 6].

The Court thus **DENIES** Keezio's motion **WITHOUT PREJUDICE** as to cross-examining Mr. Gallagher or raising objections to questions SlumberPod's counsel poses to him regarding his lost profits opinion.

**Lost Profits – Failure to Discloses Price Erosion and Advertising Costs**

Keezio further moves to preclude Mr. Gallagher from offering expert testimony on both price erosion and increased advertising costs, as part of his lost profits opinion, because "SlumberPod admitted that 'it did not specifically disclose price erosion and advertising costs as a specific damages category in its Damages Contentions….[sic]'" [Dkt 183 at 14-15 (emphasis removed)]. Keezio argues that Mr. Gallagher's expert report calculation of lost profits includes price erosion and increased advertising costs and argues that any such testimony should therefore be excluded. *Id.* at 15.

As noted above with regard to the reasonable royalty issue, SlumberPod argues that the failure to disclose the price erosion and advertising costs was substantially justified or harmless under Rule 37(c)(1). Again, the Court notes that SlumberPod's approach to the Patent Damages Contentions is not to be lauded and is not the best practices under the Patent Local Rules. However, unlike with the reasonable royalty issue above, SlumberPod did in fact disclose that it was seeking lost profits in its Patent Damages Contentions and discusses the lost profits *Panduit* factors and other applicable factors. *See* Dkt. 126-3 (SlumberPod's Patent Damages Contentions, filed under seal). The Federal Circuit has recognized that "damages may include lost profits due to diverted sales, price erosion, and increased expenditures caused by the infringement." *Hebert v. Lisle Corp.*,

99 F.3d 1109, 1119 (Fed. Cir. 1996). Indeed, "[l]ost sales and price erosion damages are inextricably linked." *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1360 (Fed. Cir. 2001). Under Federal Circuit law, both price erosion and increased expenditures (like increased advertising costs) are thus types of or sub-species of lost profits damages. Thus, by disclosing in the Patent Damages Contentions that SlumberPod was seeking lost profits, Keezio was at least on notice that these types of lost profits theories could be at issue in this case. Throughout fact discovery, Keezio did not move to compel more detailed damages contentions.

While SlumberPod did not specifically disclose either a price erosion or increased advertising cost calculation in detail in the Patent Damages Contentions, that failure to disclose was ultimately harmless. *See Looksmart Group*, 386 F. Supp. 3d at 1234-35. Keezio admits that Mr. Gallagher's expert report provided his opinions on all his lost profits theories, including price erosion and increased advertising costs. Keezio's rebuttal expert Ms. Doan provided her detailed expert report on damages which directly addressed both price erosion and increased advertising costs. Keezio chose not to move to exclude Mr. Gallagher's price erosion or increased advertising costs theories in its *Daubert* motion.

On the record presented, there is not a sufficient showing of SlumberPod's failure to disclose or prejudice to Keezio which warrants exclusion of his price erosion or increased advertising costs opinion testimony. The Court **DENIES** Keezio's motion **WITHOUT PREJUDICE** to Keezio's ability to raise appropriate objections to Mr. Gallagher's price erosion and increased costs opinion testimony in response to specific questions or to Keezio's opportunity to cross-examine Mr. Gallagher on his price erosion and increased costs opinion.

**<u>Keezio's MIL No. 2</u>**

Keezio moves to exclude SlumberPod's trial exhibits 3029 and 3030, identified as "RoyaltySource Intellectual Property Database" documents (collectively, "the RoyaltySource Documents"). [Dkt. 184 at 2]. Keezio argues these documents cannot be authenticated, contain hearsay within hearsay, and are irrelevant. *Id.*

SlumberPod responds that the documents can be authenticated under Rule 901, the documents are relevant to Mr. Gallagher's reasonable-royalty analysis, and Keezio's hearsay

objection does not prohibit Mr. Gallagher's reliance on RoyaltySource because experts may rely on otherwise inadmissible facts or data under Rule 703. [Dkt. 212 at 2-4].

The Court **DENIES WITHOUT PREJUDICE** Keezio's motion. At this time, these exhibits are **NOT** preadmitted. As SlumberPod admits, the admissibility of these documents is subject to laying foundation and establishing authenticity at trial, as well as resolution of the hearsay objection (which in turn depends on what testimony is elicited from Mr. Gallagher regarding the RoyaltySource material and how it is attempted to be used at trial). SlumberPod's opposition admits that the RoyaltySource material may be inadmissible as substantive evidence ultimately even though Rule 703 may permit him to consider the materials. *Id.* at 4.

**<u>Keezio's MIL No. 3</u>**

Keezio moves to exclude SlumberPod's trial exhibit 3036, which the Parties refer to as "the Shark Tank Video." [Dkt. 185 at 2]. Keezio argues the video was not produced in discovery, the video cannot be authenticated, lacks foundation, and constitutes hearsay, and introducing the video would be unfairly prejudicial. *Id.* at 3-6.

SlumberPod responds that the video is relevant to willful infringement and is not offered to prove the truth of the inventors' statements, that Rule 403 does not warrant categorical exclusion, and that any failure to produce the video was harmless under Rule 37(c)(1). [Dkt. 213 at 2-4].

The Court **DENIES** the motion to the extent Keezio argues that the failure to produce the video in discovery should, by itself, bar admissibility. The record indicates that the video was discussed between the Parties, known to at least one witness for Keezio, was the subject of questioning at that Keezio witness's deposition, located and discussed in a prior Order issued by Judge Demarchi during fact discovery, and thus known to the Parties. The fact that neither Party downloaded a copy of the Shark Tank Video and put a Bates number on that copy is not dispositive of admissibility. There is no prejudice or surprise here with regard to this video.

The Court **DENIES WITHOUT PREJUDICE** Keezio's motion to the extent Keezio objects on grounds of lack of foundation and authenticity. At this time, the Shark Tank Video is **NOT** preadmitted. As SlumberPod admits, the admissibility of this video is subject to laying foundation and establishing authenticity at trial.

United States District Court
Northern District of California

The Court **DENIES WITHOUT PREJUDICE** Keezio's motion to the extent Keezio objects on hearsay grounds. SlumberPod explicitly states it does not intend to use the video for the truth of the matter asserted, thus the video does not constitute hearsay. As noted, at this time, the Shark Tank Video is **NOT** preadmitted. As SlumberPod admits, how the video is used at trial and the reasons for its submission will depend on the specific questioning/testimony and ways in which it will be used at trial. Resolution of the admissibility issue will therefore depend on resolution of the hearsay objection raised in connection with specific questions. The Court notes that, if the video is presented to the jury on the grounds SlumberPod asserts (that is, that the Shark Tank Video is not being offered for the truth of the matters asserted), then the Court will consider providing limiting instructions to the jury.

For similar reasons, the Court **DENIES WITHOUT PREJUDICE** Keezio's motion to the extent based on Rule 403. Whether the probative value is or is not substantially outweighed by the prejudice will depend on the specific questioning/testimony and ways in which it will be used at trial. Resolution of the Rule 403 objection will therefore depend on the context in connection with specific questions, not on a blanket basis prior to trial.

At the Final Pretrial Conference, SlumberPod argued that pre-patent copying is indicative of willfulness, and cited for the first time multiple cases in support of this. *See Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 978-79 (Fed. Cir. 1986) (rejecting the argument that copying was irrelevant because it took place before the patent issued); *see also Nox Med. Ehf v. Natus Neurology Inc.*, No. 15-709-RGA, 2018 WL 4062626, at *13 (D. Del. Aug. 27, 2018) ("Deliberate copying of the commercial product of the patent owner before issuance of the patent . . . can be evidence of willfulness to the extent it demonstrates [Defendant's] state of mind[.]") (citation omitted). The Court gave Keezio leave to file a short letter brief by September 30, 2026, addressing this newly presented case law. Keezio did not file by the deadline. Because the new case law is not materially different from the case law relied upon by the Court in the Tentative Ruling, the Court's conclusion remains the same.

/ / /

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: October 8, 2026

PETER H. KANG
United States Magistrate Judge